**CONTINENTAL GRAPHICS, DIVISION OF REPUBLIC CORPORATION, a Delaware corporation, Plaintiff,**

**v.**

**HILLER INDUSTRIES, INC., a Utah corporation, Defendant and Third Party Plaintiff,**

**Instituto Mexicano Del Seguro Social, an Agency of the Republic of Mexico, Third Party Defendant.**

**Civ. No. C83–602G.**

United States District Court, C.D. Utah, C.D.

Aug. 5, 1985.

---

Kevin Anderson, Fabian & Clendenin, Salt Lake City, Utah, for plaintiff.

Stephen Stoker, Salt Lake City, Utah, for defendant and third party plaintiff.

Barbara Strickland, Salt Lake City, Utah, for third party defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

The matter came on for hearing before the Court on Third Party Defendant's Motion to Dismiss on June 28, 1985. Kevin Anderson appeared as counsel for plaintiff, Stephen Stoker as counsel for Defendant and Third Party Plaintiff Hiller Industries, Inc. (hereinafter "Hiller"), and Barbara Strickland as counsel for Third Party Defendant Instituto Mexicano del Seguro Social (hereinafter "IMSS"). Extensive memorandums of law had been submitted to the Court and certain additional filings were received at the beginning of the hearing. Extensive oral argument was presented by counsel for Hiller and IMSS, after which the matter was submitted to the Court for ruling, subject to receipt of a Reply Memorandum which the Court granted counsel for Hiller the right to file, and which in fact was filed on July 15, 1985. Now after due consideration, and being fully advised, the Court denies IMSS's Motion to Dismiss. For the reasons set forth below, we hold that the Mexican agency waived its immunity to suit and find subject matter and personal jurisdiction to exist in this case. We likewise hold that objections as to improper venue and forum non conveniens do not require dismissal of the action.

The Motion to Dismiss requires analysis of the applicability of the Foreign Sovereign Immunities Act (hereinafter "FSIA") as applied to an agency of the Mexican government under the facts of this case. The operative facts are that in 1982, a representative of Continental Graphics met with representatives of IMSS, an agency or instrumentality of the government of the United Mexican States, in Mexico and negotiated an agreement to print, collate and bind 3100 sets of a two-volume treatise called "El Torrito Mexicano." The contract was executed in Mexico and called for related sets of maps and map cases in addition to the books. Continental, a California corporation, then subcontracted with Hiller, a Utah corporation, to collate and bind the books and to provide map cases called for under the IMSS–Continental contract. Continental retained responsibility to print the books, and after it had finished doing so, several representatives of IMSS went to California to proof read and inspect the printed materials. At that time the materials had not yet been bound or collated as called for in the Hiller-Continental subcontract. The IMSS personnel all spent one week in California inspecting the materials, and met with representatives of Hiller as well as representatives of Continental while there. These meetings included at least two sessions to negotiate or dismiss the terms of the Hiller book-binding subcontract. Thereafter, Hiller completed the binding, collation and map case production in Utah, and the sets were shipped by Hiller to IMSS in Mexico. IMSS received the books and materials, but refused to pay for them because of claimed defects including the fact that some of the sets contained a photograph that was printed upside-down. As a result, a representative of Continental went to Mexico and arranged a price-reduction under the contract to reflect the printing error. The original price was $1,957,968.80. IMSS had made down payments of about $600,000.00 before the new price was negotiated, leaving a balance due of $1,365,956.80. The newly negotiated price was $1,000,000.00, thus effectively reducing the contract price by $365,956.80, allegedly to reflect printing and collation errors. IMSS still owes approximately $700,000.00 of this amount, which it concedes is due, but resists action by Hiller against it in United States courts. Continental has sued Hiller, alleging that Hiller was responsible for the defects in the books and that therefore Hiller is liable to Continental for any payments IMSS has not made, and for the price adjustment

allegedly necessitated by the defective books.

Hiller was granted permission by the court to join IMSS, and by Third Party Complaint has alleged that IMSS is ultimately responsible for claims asserted by Continental against Hiller. IMSS has moved to dismiss Hiller's Third Party Complaint on three principal grounds: (1) service was improperly made under FSIA; (2) this Court lacks subject-matter jurisdiction; and (3) there is no personal jurisdiction over IMSS. IMSS also raises in its legal memoranda the issues of improper venue and forum non conveniens. Under the facts above set forth, which are undisputed, we consider that IMSS is properly before the court and that the case should progress to the merits. The legal considerations which dictate this conclusion will now be discussed.

### 1. *Service of Process*

██ Section 1608(b) of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1602–1608 governs service of process upon agencies and instrumentalities of foreign governments. One method of serving process thereunder is by way of letters rogatory under § 1608(b)(3)(A), which provides that service can be effected "as directed by an authority of the foreign state or political subdivision in response to a letter rogatory." In the instant action, Hiller obtained letters rogatory from this Court, submitted such to appropriate persons in Mexico, arranged for translation of the materials into Spanish, and submitted them to officials of the Mexican Federal Court. IMSS was then served in accordance with the directions of the Mexican Federal Court. Documents to establish the aforesaid were filed with this Court, and counsel for IMSS appeared to concede the validity of the service. In any event, the Court finds that service was adequate under the FSIA.

### 2. *Subject Matter Jurisdiction*

Section 1330(a) of the FSIA provides that the district courts shall have original juris-diction of non-jury civil actions against foreign states involving claims for relief in personam where the foreign state "is not entitled to immunity either under § 1605–1607 of this title or under any applicable international agreement" [28 U.S.C. § 1330(a)]. Section 1605 of the Act contains the so-called "commercial activity" exception under which it is acknowledged that an otherwise immune foreign sovereignty may become amenable to suit. Under that Section, the commercial activity waiver becomes effective in any of the following situations:

1) the commercial activity is carried out in the United States;

2) it performs an act in the United States in connection with a commercial activity of the foreign state elsewhere;

3) it performs an act outside the United States that in connection with a commercial activity of the foreign state elsewhere causes a direct effect in the United States.

[28 U.S.C. § 1605(a)(2).]

The definition of "commercial activity" is set forth in subsection 1603(d) which provides:

(d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

██ The activities of IMSS in contracting were commercial rather than governmental activities within the meaning of FSIA, but IMSS denies that these admittedly commercial activities were carried out in the United States, or that it performed any act in the United States in connection with a commercial activity carried on elsewhere, or that it performed an act abroad in connection with its commercial activities that had a direct effect in the United States. IMSS argues that any commercial activity it pursued must have been in Mexico because the contract in question was negotiated and executed in Mexico and was

"merely" to be performed in the USA. However, "mere" performance of the contract in question necessarily involved substantial commercial activities requiring large usage of labor and materials in the United States. IMSS knew this from the beginning. In connection with such commercial activities, IMSS sent at least four representatives to this country to inspect the printing work done by Continental in California. At least two of the representatives remained in the United States for over one month. These representatives met with Hiller to review the performance expected and to discuss details concerning materials to be used in the binding process and other specifics. The negotiations and inspections by IMSS in California were clearly connected with the commercial activities of IMSS in Mexico in producing the books and maps. Accordingly, even if it could be said that IMSS did not directly "carry out" commercial business in the United States, it certainly performed acts in the United States in connection with its commercial activities carried out in Mexico. Also, when IMSS modified its original contract there was additional direct effect and impact in the United States, including the controversy and cause of action which underlies the present litigation. We hold that IMSS waived its immunity to be sued in the United States District Courts of this country and that subject matter jurisdiction exists.

### 3. *Personal Jurisdiction*

■ Section 1330(b) of the FSIA provides that personal jurisdiction over a foreign state exists where subject matter jurisdiction is found to exist under Section 1330(a) and there has been service of process. That mechanical statutory formula could not create personal jurisdiction, however, if the Constitution forbids it. Accordingly, the question becomes whether IMSS has sufficient contacts with the United States so as to satisfy traditional due process considerations. It is important in each case that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In making this determination, four factors must be considered: (1) the extent to which the defendant availed itself of the privileges of U.S. law, (2) the extent to which litigation in the United States would have been foreseeable to the defendant, (3) the inconvenience to the defendant of litigating in the United States, and (4) the countervailing interest of the United States in hearing the suit. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Hanson v. Denckla, infra; McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The activities of IMSS, and the impact thereof in the United States, should be measured by these standards.

■ On the facts at hand, the first factor is clearly met. IMSS purposefully availed itself of the services of a U.S. company to perform services in the United States for it. Further, it sent representatives here to review the work and to make inspection of the goods. Had IMSS wanted to, most certainly it could have sued either Continental or Hiller in U.S. Courts. The contract was completely performed in the United States by U.S. workers governed by U.S. law. While IMSS correctly points out that mere contracting with a resident of a foreign corporation is insufficient to provide jurisdiction with nothing more, *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), the fact remains that it availed itself of the protections of U.S. laws by contracting for production of goods here. The issue is not one of abstract theory, but of economic reality. *Thomas P. Gonzales Corp. v. Consejo Nacional de Produccion de Costa Rica,* 614 F.2d 1247 (9th Cir.1980).

Turning to the foreseeability factor, when IMSS elected to contract for production of the books in the United States, it was readily foreseeable that litigation might arise from the physical aspects of

production. The most obvious foreseeable possibility was what actually happened, that there might be a dispute concerning nonconforming goods. That there would be subcontracts in order to accomplish and carry out the project was also readily foreseeable. Likewise, problems arising under such subcontracts in interpretation, quality of performance, meeting time constraints and like problems was predictable. By the time IMSS and Continental modified their agreement such problems were apparent, not merely foreseeable. The second factor is met.

As to the third factor, the Court recognizes that litigating this matter may be inconvenient to IMSS. IMSS responded to this action initially by entering an appearance through the Mexican Consul in Salt Lake City. Since then, extensive legal memoranda and appearances through able counsel has demonstrated the clearcut ability of IMSS to have its interests well represented in this forum. The alternative of piecemeal litigation in the U.S. and in Mexico, or transfer of the entire matter to Mexico City, most certainly would be more inconvenient to all other parties and burdensome in terms of judicial economy than resolution of the matter here. Moving to the fourth factor, the interest of the United States government in having this dispute resolved in its courts is significant and substantial. The very purpose for which the FSIA was passed was to enable citizens of this country to resolve disputes in United States Courts where labor and capital of this country are utilized in the furtherance of commercial activities or similar matters. Prior to passage of the FSIA, the U.S. had almost uniformly granted sovereign immunity across the board to foreign sovereigns. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 486, 103 S.Ct. 1962, 1967, 76 L.Ed.2d 81, 85 (1983). The FSIA was intended to alter that policy and provide access to the courts in appropriate cases involving foreign sovereigns and their agencies, H.Rep. No. 94–1487, 94th Congress, 2d Sess. 13, 14 (1976), reprinted in 1976 U.S.Code Cong. & Admin.News at 6604, 6611, 6612. We find the third and

fourth factors to be present under the facts of this case.

IMSS next argues that even if it is subject to suit in federal district courts as a general proposition, it is not subject to jurisdiction in *this* court because it had no contacts with Utah. But the activities of IMSS in California and contacts there is enough to constitute waiver of sovereign immunity and to satisfy subject matter jurisdiction. In addition, activities of IMSS did in fact touch and impact Utah, in that before the binding and collating of the books in Utah, and before the map case production occurred in Utah, IMSS met with representatives of Hiller and concurred that such commercial activity should occur here. We need not pursue the jurisdictional implications of such impact upon Utah, however, since we are persuaded by decisions of the vast majority of courts which have held that the relevant forum for determining whether personal jurisdiction exists is the entire United States, not the particular district. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria, et al.*, 647 F.2d 300 (2d Cir.1981). *See also Banker's Trust Co. v. Worldwide Transportation Services*, 537 F.Supp. 1101 (E.D.Ark.1982) and cases cited therein at pp. 1108, 1109. Cf. *Meadows v. Dominican Republic*, 542 F.Supp. 33 (N.D.Ca. 1982), *Waukesha Engine Division, Dresser Americas, Inc. v. Banco Nacional de Fomento Cooperativo*, 485 F.Supp. 490 (E.D.Wis.1980). Having found that requiring IMSS to appear in this court would not violate due process considerations, we hold that this court has personal jurisdiction as to IMSS in this dispute.

### 4. Venue and Forum Non Conveniens

IMSS argues in its brief that in all events venue is laid improperly in the District of Utah, and/or that the doctrine of Forum Non Conveniens applies. We reject both arguments.

■ Independent venue need not be met where, as here, third parties are brought into litigation ancillary to the pending suit.

*U.S. v. Acord,* 209 F.2d 709, 712 (10th Cir.1954), *cert. denied. Acord v. U.S.,* 347 U.S. 975, 74 S.Ct. 786, 98 L.Ed. 1115 (1954).

 We find no merit in IMSS' argument that the doctrine of forum non conveniens should apply to dismiss Hiller's third party complaint under 28 U.S.C. § 1404(a). IMSS has failed to demonstrate that the matter could be resolved more conveniently in any other forum, and that the parties would obtain justice there. IMSS apparently assumes that the matter could be tried in the courts of Mexico, but has failed to demonstrate that IMSS would appear in those courts and that the plaintiffs would not be compromised by dismissal of this action. *Swift & Co. Packers v. Compania Colombiana Del Caribe,* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). Also, IMSS has made no showing that the ends of justice and convenience of the parties will best be served by dismissing the case. The standard is a very stringent one which requires balancing the plaintiff's interest in its choice of forum against the relative burden of inconvenience imposed on the defendant by choice of the forum. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The court noted in *Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955), that the forum non conveniens doctrine has been applied to justify dismissal of a case where the forum chosen by the plaintiff is "so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else." But the court continued:

> It is quite naturally subject to careful limitation for it not only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but makes it possible for him to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate. (349 U.S. at 31, 75 S.Ct. at 546.)

Here, IMSS was joined as a third party defendant in a case already in progress. To dismiss the complaint against IMSS and require Hiller to pursue its remedy separately in Mexico would require piecemeal re-litigation of many issues presented here, and certainly would not bring about judicial economy. Most of the documents, witnesses and other evidence relevant to this dispute are in the United States. While we recognize that IMSS will be burdened to some extent in defending itself here, the alternative of trial in Mexico is even more burdensome overall.

For the foregoing reasons, Third Party Defendant IMSS's Motion to Dismiss is hereby denied.