Brad M. REISS, Plaintiff,

v.

SOCIETE CENTRALE DU GROUPE DES ASSURANCES NATIONALES, a/k/a Societe Centrale Du Gan, a/k/a Societe De Gestion De Garanties Et De Participations, Union Pour Le Financement D'Immeubles De Societes, Union Industrielle De Credit and Gan S.A., Defendants.

No. 98 Civ.8302(VM).

United States District Court, S.D. New York.

Feb. 13, 2002.

Richard E. Haftel, Modlin, Haftel & Nathan, LLP, New York City, for plaintiff.

Fredrick E. Sherman, Jones, Day, Reavis & Pogue, New York City, for defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Brad M. Reiss ("Reiss") filed this action in 1998, to recover a "finder's fee" allegedly owed to him by defendants Societe Centrale du Groupe des Assurances Nationales ("Societe"), Union pour le Financement D'Immeubles de Societe ("UIS"), Union Industrielle de Credit ("UIC"), and GAN S.A. (hereinafter collectively referred to as "Defendants"), all of which are French governmental entities. Reiss claims that Defendants' obligation arose from an agency relationship for his work, performed in the United States, in soliciting an American corporation, GECC, to purchase UIC and UIS from Defendants. According to Reiss, his agency agreement was consummated on behalf of Defendants by Alaine Juliard ("Juliard") UIS's chairman, at several meetings with him, in the United States, that occurred from 1992 through 1995.

Defendants filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction under the New York state long-arm statute, N.Y. C.P.L.R. § 302, and Fed.R.Civ.P. 12(b)(6) for failure to state a claim on the ground that Reiss did not establish that Defendants had authorized Reiss to act as their agent. The district court granted Defendants' motion. *See Reiss v. GAN S.A.,* 78 F.Supp.2d 147 (S.D.N.Y.1999). Although given leave to replead, Reiss instead appealed the district court's ruling.

On appeal, the Second Circuit reversed the dismissal and instructed the parties to engage in discovery on the issue of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). *See Reiss v. Societe Centrale Du Groupe Des Assurances Nationales,* 235 F.3d 738, 747–48 (2d Cir.2000).[1] In particular, the Second Circuit instructed that:

> The question here is whether Reiss can demonstrate a significant nexus between his engagement by Societe and/or GAN S.A. as a marketing agent in the United States and his action to recover a finder's fee for the deal that culminated in the sale of UIC and UIS by Societe to GECC. That question cannot be resolved without a determination as to whether Reiss was in fact retained by Societe and/or GAN S.A.... Although Juliard was the chairperson of UIS, it may very well be that he acted on behalf of Societe and/or GAN S.A. in his dealings with Reiss, whose claim basically is that he was hired by Juliard on behalf of Societe and/or GAN S.A. and performed

1. The Second Circuit found that Defendants are foreign states under the FSIA. *See id.* at 738, 746. Therefore, instead of New York state laws, "[t]he FSIA provides the 'sole basis' for obtaining jurisdiction over foreign states and their instrumentalities in the United States." *First City v. Rafidain Bank,* 150 F.3d 172, 176 (2d Cir.1998) (citations omitted). Here, personal jurisdiction over Defendants is not contested. Rather, the question is whether Reiss can establish subject matter jurisdiction over Defendants. *See Reiss,* 235 F.3d at 746.

services that led to the sale of UIS and UIC to GECC.... Reiss should be permitted to go forward with the discovery to which he is entitled.

On remand, the case was assigned to this Court. The Court assumes familiarity with the detailed description of the identities of the parties and other underlying facts set forth in the Second Circuit's decision.

Following up on the Circuit Court's holding, Reiss arranged for discovery proceedings before the Tribunal de Grande Instance in Paris—Service des Commissiones Rogatoires Internationales that are scheduled to commence on February 25, 2002. At those proceedings, Reiss contemplates examining three executives of Defendants, Philippe Rosio, Guy de Chavanne, and Juliard (collectively hereinafter the "French Officials"), as the Second Circuit encouraged him to do. *See id.,* at 747 ("We think it would be helpful to have the depositions of Juliard and de Chavanne ... to assist the court in undertaking an FSIA jurisdiction analysis.").

In anticipation of those proceedings, Reiss filed a letter brief seeking clarification on the scope of permissible discovery. (Letter from Richard E. Haftel to the Court, dated Jan. 2, 2002). Reiss indicated that he would seek discovery of matters occurring in 1992 through 1995. (Letter from Richard E. Haftel to the Court, dated January 25, 2002 ("Haftel Letter").) At a status conference held before the Court on January 4, 2002, Defendants stated that they would oppose Reiss's efforts to obtain discovery regarding any matter beyond the events that occurred following Reiss's initial meeting with Juliard in July of 1992. Defendants assert that Reiss may seek discovery only on the alleged date of his engagement by Juliard, which Reiss identifies in the complaint as July 1992, and may

not pursue any inquiry that may touch upon the merits of the action in any way.

The Court ordered further briefing to assist it in identifying the scope of discovery to which Reiss is entitled at this stage of litigation.

### DISCUSSION

■ Because federal courts are courts of limited jurisdiction, they must police subject matter delineations on their own initiative. *See* Fed.R.Civ.P. 12(h); *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (citing Fed.R.Civ.P. 12(h)); *Lyndonville Savings Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700 (2d Cir.2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte."*) *Creaciones Con Idea, S.A. de C.V. v. MashreqBank PSC,* 75 F.Supp.2d 279, 280–81 (S.D.N.Y. 1999) (*sua sponte* dismissal for lack of subject matter jurisdiction under 28 U.S.C. § 1332). The Court is now asked to decide whether, in furtherance of the Court's jurisdictional analysis, Reiss's examination of the French Officials should be limited to the events that occurred in 1992 and only in the United States, or, encompass matters during the time period of 1992 through 1995 both in the United States and, to the extent bearing on the jurisdictional issue, in France as well.

■ According to Defendants, "the only relevant question pertaining to this Court's jurisdiction over Societe Centrale is whether Mr. Juliard, *as a representative of Societe Centrale,* hired Mr. Reiss in July of 1992 *in the United States."* (Letter of Lawrence W. Newman to the Court, dated January 18, 2002 (emphasis in original).) The Court finds that Defendants' position on this point is untenable. Defendants would have FSIA jurisdiction inquiry limited to acts taken by individuals pre-

authorized to represent foreign states and taken only when physically present in the United States. Neither the FSIA, the Second Circuit case law or holding in this action, nor the rules of agency compel such a convergence of time, place and authorization.[2] As the Court explains below, a party's ratification, that is, subsequent approval of an agent's performance, may support a finding of jurisdiction under the FSIA, even if such approval is granted and transmitted from abroad.

■ Under the FSIA, "a foreign state is presumptively immune from the jurisdiction of the United States courts; unless a specified exception applies, a federal court lacks subject matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson,* 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993); *see also* 28 U.S.C. §§ 1604, 1605; *Reiss,* 235 F.3d at 746. As the Second Circuit held and the parties here agree, "the only arguable exception upon which Reiss may rely is the 'commercial activity' exception" which confers subject matter jurisdiction upon federal courts in any case:

[I]n which the action is based upon a commercial activity carried on in the United States by a foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere;

or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes direct effect in the United States.

28 U.S.C. 1605(a)(2). The FSIA clearly contemplates that acts supporting jurisdiction may occur in, and outside, the United States.

■ The Second Circuit considered Reiss's complaint under the first clause of the commercial activity exception, namely, "commercial activity carried on in the United States by [a] foreign state".[3] To determine whether the exception applies, parties are entitled to some discovery. *See First City,* 150 F.3d at 176 ("[G]enerally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue.") (internal quotations and citation omitted). This Court has the authority, and duty, to order discovery into the FSIA jurisdictional issue. *See Reiss,* 235 F.3d at 748; *Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C.Cir.2000). Of course, given the comity and sensitivity owed foreign sovereigns, such discovery should be given appropriate limits. *See Phoenix Consulting,* 216 F.3d at 40; *see also Kelly v. Syria Shell Petroleum Development B.V.,* 213 F.3d 841, 849 (5th Cir. 2000) ("when FSIA immunity has been claimed, unlimited jurisdictional discovery

**2.** At the January 4, 2002 conference, Defendants also appeared to suggest that Defendants' representatives were physically present in the United States only during 1992. Defendants' suggested version of events is not supported by facts in the record and is contradicted by the annotated time-lines, not factually challenged by Defendants, which were submitted by Reiss in support of his motion. (*See* Haftel Letter.)

**3.** The Court also notes that the Supreme Court's decision in *Republic of Argentina v. Weltover,* 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992), potentially might provide

additional support for this Court's decision. In *Weltover,* the Supreme Court reasoned that where New York was the place of performance for a contractual obligation, a change to performance of the contract supported jurisdiction under the third, "direct effect" clause of § 1605(a)(2). *Id.* at 619, 112 S.Ct. 2160. Likewise, performance of, or payment for, the finder's fee contractual obligation, as alleged by Reiss, might support jurisdiction under the third clause of § 1605(a)(2). *See also Continental Graphics, Div. of Republic Corp. v. Hiller Industries, Inc.,* 614 F.Supp. 1125 (D.Utah 1985).

is *not* permitted as a matter of course. Instead it should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination.") (internal quotations and citations omitted) (emphasis in original); *First City,* 150 F.3d at 176.

While Defendants are correct that discovery regarding jurisdiction under the FSIA must be carefully circumscribed, Defendants seek to unduly constrain discovery in applying the foregoing general principles to the facts of this case. In 1998, Reiss detailed facts in the complaint that might support the Court's exercise of jurisdiction herein. If Reiss can establish that Juliard, who allegedly had numerous contacts with Reiss in the United States and France during the period from 1992 through 1995, was acting as agent for any of the Defendants, then Reiss has established the substantial nexus necessary for jurisdiction. *See Reiss,* 235 F.3d at 747. A necessarily central inquiry in this regard is the scope of Juliard's authority to enter into agreements of the type at issue here and to bind Defendants thereby. That question is discrete and entirely distinct from whether or not Defendants actually engaged in the commercial activities in the United States that Reiss alleges. Moreover, the predicate for any authority Juliard may have possessed may fundamentally rest upon events that extended in time beyond Juliard's only interaction with Reiss in July 1992 or in place beyond the United States. Thus, if the source of that authority is to be traced and verified, its trail cannot be artificially truncated at a given moment, as though nothing preceded or succeeded the sole act in July 1992 that Defendants seek to isolate as the only relevant point. Such a static view of things does not accord with the reality that human events occur in multiple chains of related reactions and interactions whose origins and effects cannot be captured and time-frozen in a single snapshot, as Defendants' theory would propound.

■ In addition to the question of whether Reiss was engaged by Defendants during July 1992, there is a second pertinent line of inquiry essential for Reiss to pursue: whether Reiss's or Juliard's conduct, if unauthorized when taken, was later authorized by Defendants through ratification. "Ratification is a form of retroactive authority" that occurs where a principal, having knowledge of the material facts, accepts the benefits of the agent's actions already made on his behalf. *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 850 F.Supp. 1199, 1213 (S.D.N.Y.1994); *see also Chemical Bank v. Affiliated FM Ins. Co.,* 196 F.3d 373, 375–76 (2d Cir.1999), *cert. denied,* 531 U.S. 1074, 121 S.Ct. 767, 148 L.Ed.2d 667 (2001). Indeed, in the complaint, Reiss identified the issue of subsequent authorization by alleging that Juliard might need further authorization from GAN S.A. "before he took any actions with respect to any important matters." (Compl., ¶ 33.)

■ Additional analogous authority for permitting discovery on the second question may be found in cases, cited by Reiss, based upon personal jurisdiction analysis. Although that inquiry addresses a different ultimate issue, under some circumstances the basis for both personal and subject matter jurisdiction could be predicated on the existence of an agency and the conduct of the alleged agent in furtherance of the legal relationship. To ascertain whether an agency relationship exists, a court may consider whether the agent's acts were ratified by subsequent conduct of the principal. *See Pennie & Edmonds v. Fabry Glove & Mitten Co.,* No. 89 Civ. 0883, 1990 WL 9323, *2– *3 (S.D.N.Y. Jan. 29, 1990) ("A ratification arises 'when a party to a voidable contract accepts bene-

fits flowing from the contract, or remains silent, or acquiesces in contract [sic] for any considerable length of time after he has opportunity to annul or void the contract.'") (citing *The Prudential Ins. Co. of Amer. v. BMC Indus. Inc.*, 630 F.Supp. 1298, 1300 (S.D.N.Y.1986)). Here, if proven, ratification by Societe or GAN S.A. necessarily would have occurred subsequent to Juliard's initial visit to New York in July of 1992. *See also Bank of Montreal v. Mitsui Manufacturers Bank*, No. 85 Civ. 1519, 1987 WL 5829, * 2 (S.D.N.Y. Jan. 21, 1987) (personal jurisdiction over an out-of-state defendant was found based on the performance of "purposeful acts with persons or entities in New York regarding the contract, albeit preliminary or subsequent to its execution."); *Applied Hydro–Pneumatics, Inc., v. Bauer Manufacturing*, 68 A.D.2d 42, 416 N.Y.S.2d 817, 820 (App.Div.2d Dept.1979).

In sum, to answer the question identified by the Second Circuit—that is, whether Reiss can demonstrate subject matter jurisdiction under the FSIA, through a determination of "whether Reiss was in fact retained by Societe and/or GAN S.A."—Reiss is entitled to obtain discovery regarding any authorization that may have occurred prior to, contemporaneously with or subsequent to the July 1992 meeting between Juliard and Reiss in New York, even if such authorization occurred outside the United States. This inquiry conceivably may overlap with facts and issues relevant to the merits of Reiss's claims. To some extent that prospect is unavoidable because not uncommonly jurisdictional and substantive issues are integrally connected. This side effect of the jurisdictional analysis that the parties and Court must undertake could be minimized by carefully-focused questions that in good faith honor the spirit of the limitations on discovery to specific facts bearing on the jurisdiction and immunity determinations.

## ORDER

For the foregoing reasons, it is hereby

**ORDERED** that, as part of the initial FSIA jurisdiction-related discovery, Reiss may inquire into matters related to the agency relationship and authority pertaining thereto of Juliard and Reiss and occurring between January 1, 1992 and December 31, 1995.

**SO ORDERED.**