**CARGILL INTERNATIONAL S.A., and Cargill, B.V., Plaintiffs–Appellants,**

v.

**M/T PAVEL DYBENKO, her engines, tackle, etc., in rem; Novorossiysk Shipping Co., in personam, Defendants–Appellees.**

No. 960, Docket 92–7876.

United States Court of Appeals, Second Circuit.

Argued Feb. 17, 1993.

Decided April 19, 1993.

Caspar F. Ewig, New York City (Frances C. Peters, Hill, Rivkins, Loesberg, O'Brien, Mulroy & Hayden, of counsel), for plaintiffs-appellants.

George B. Freehill, New York City (Freehill, Hogan & Mahar, of counsel), for defendant-appellee Novorossiysk Shipping Co.

Before: OAKES, ALTIMARI and MAHONEY, Circuit Judges.

OAKES, Circuit Judge:

Plaintiff–Appellant, Cargill B.V. ("CBV"), appeals from the grant of summary judgment by the United States District Court for the Southern District of New York, Charles E. Stewart, Jr., *Judge,* in favor of the defendant, Novorossiysk Shipping Company ("Novorossiysk"), denying plaintiffs' request to compel Novorossiysk to arbitrate in London.[1] *Cargill Int'l S.A. v. M/T PAVEL DYBENKO,* No. 90 Civ. 3176, 1992 WL 42194, 1992 U.S.Dist.LEXIS 2329 (S.D.N.Y. Feb. 26, 1992). The district court found that Novorossiysk was a foreign sovereign and that CBV had failed to establish jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611 (1988 & Supp. III 1991) ("FSIA"). For the reasons that follow, we reverse and remand.

## BACKGROUND

On June 14, 1988, CBV, a Dutch corporation with its principal offices in Amsterdam, bought 7,000 metric tons of crude Argentine degummed soybean oil from CISA, a company incorporated under the laws of the Netherlands Antilles and based in Geneva, Switzerland. Subsequently, CISA entered into a Charter Party with Novorossiysk, an entity wholly owned by the former Soviet Union, to transport the oil from Argentina and Brazil to the Netherlands aboard Novorossiysk's ship, the M/T Pavel Dybenko.[2]

Under Clause 24, in Part II of the Charter Party, any dispute arising out of the Charter Party is to be submitted to arbitration in either New York or London, "whichever place is specified in Part I of this charter pursuant to the laws relating to arbitration there in force." Clause K of Part I specifies London as the site for arbitration proceedings. In addition, Clause 28 of the Special Provisions appended to the Charter Party provides that the bills of lading should "incorporate particulars of Charter Party i.e. ...—Arbitration in London should be stated in the Bill of Lading."

On July 16–18, 1988, the M/T Pavel Dybenko was loaded with 9,100 metric tons of degummed soyabean oil in San Lorenzo, Argentina, and on July 23, 1988, with 5,750 metric tons in Rio Grande, Brazil. Pursuant to the terms of the Charter Party, CISA, through its Argentine agents/shippers, had the bills of lading presented to the master of the Pavel Dybenko for his signature. Despite Clause 28 of the Charter Party, the bills of lading failed to "incorporate particulars" of the Charter Party, including the arbitration provision. CBV is the receiver and holder of bills of lading issued in connection with this cargo.

1. The parties stipulated that Cargill International S.A. ("CISA") would stay its claims against Novorossiysk pending the outcome of arbitration in London instituted by CISA, pursuant to the arbitration clause in the Charter Party. This appeal therefore is brought only by CBV.

2. The defendant vessel, the M/T Pavel Dybenko, does not sail into American waters, and no service of process has been effectuated against the vessel or any representative. The federal courts therefore have no jurisdiction over the vessel.

After arrival in Amsterdam, CBV subjected the cargo to chemical analysis and allegedly found it to have been contaminated with hydrocarbons during the course of the voyage. As a result CBV claimed monetary damages in the amount of $920,000. CBV presented its claim to the West of England Shipowners Mutual Insurance Association ("West of England").[3] As security for the claim, West of England guaranteed by letter that it would appear and pay any judgment rendered by a Dutch court having jurisdiction in this case. From July, 1989 to April, 1990, the parties' insurance representatives entered into three agreements extending CISA and CBV's time to commence legal proceedings against the defendants. The last extension granted by defendants was to expire on May 9, 1990.

On May 7, 1990, the plaintiffs sought an additional three-month extension. They telexed their request to Novorossiysk's headquarters in Moscow. Apparently the request arrived on a state holiday and received no response. As a result, on May 9, 1990, CISA designated its arbitrator in London under the terms of the Charter Party. Both CBV and CISA also brought this suit against the defendants in order to protect whatever rights they might have in the United States, the only forum in which the statute of limitations had not yet expired. No other fora remained open to them at the time. The complaint sought an order to compel Novorossiysk to arbitrate in London. As noted above, CISA has agreed to stay its claims pending the outcome of its arbitration in London.

In CBV's suit before the district court, it alleged jurisdiction based on three exceptions to the FSIA: the waiver exception, the arbitration exception, and the maritime lien exception, found respectively in 28 U.S.C. §§ 1605(a)(1), 1605(a)(6)(B), and 1605(b) (1988 & Supp. III 1991). The district court found none of the exceptions to be applicable. First, the court found no implicit or explicit waiver by Novorossiysk of its sovereign immunity due to its agreement in the Charter Party to arbitrate dis-

putes in London. Second, the court noted that the bills of lading contained no arbitration clause and thus the arbitration exception did not apply. The court refused to consider CBV's argument that it was a third-party beneficiary of the arbitration clause in the Charter Party. According to the court, it required a "basis for subject matter jurisdiction" in order to reformulate the contract between CBV and Novorossiysk. Third, the court found that the plaintiffs had met none of the requirements to enforce a maritime lien.

Because a court has jurisdiction to determine its own jurisdiction, we reverse and remand to the district court for a determination of whether CBV can prove its third party beneficiary status and thus establish subject matter jurisdiction.

## DISCUSSION

CBV, having dropped its maritime lien argument, maintains that Novorossiysk has waived its immunity on two grounds listed in the FSIA. CBV also argues for the first time that Novorossiysk is no longer a sovereign entity and should be denied immunity on that ground. We address these arguments below, beginning with the newest one.

### A. Novorossiysk's Status as a Sovereign Entity

■ On appeal, CBV argues that Novorossiysk is no longer immune to suit as a foreign sovereign. According to CBV, the defendant has begun the process of privatization and therefore should no longer be considered a sovereign entity. We reject this argument.

■ Initially, we note that although there is a controversy over whether subject matter jurisdiction is measured from the time of the acts in question or from time of trial, compare, e.g., Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 450 (6th Cir.1988) ("determination of whether a party is subject to the court's jurisdiction ... should be based upon a party's status

---

**3.** West of England is Novorossiysk's "PandI Club," the Protection and Indemnity Association which provides the company's liability insurance.

at the time the act complained of occurred") *cert. dismissed,* —— U.S. ——, 112 S.Ct. 1657, 118 L.Ed.2d 317 (1992), *with, e.g., Wolf v. Banco Nacional de Mexico, S.A.,* 739 F.2d 1458, 1460 (9th Cir.1984) (banks nationalized after acts occurred but before suit), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985), we do not believe it can be found retroactively from the time of appeal.

CBV argues that the policy behind the FSIA is inapplicable in this case. As it notes, the FSIA was enacted to address "the potential sensitivity of actions against foreign states." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 32 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6631 ("House Report"). Thus, it aimed "to facilitate and depoliticize litigation against foreign states and to minimize irritations in foreign relations arising out of such litigation." *Id.* at 45, *reprinted in* 1976 U.S.C.C.A.N. at 6634 (executive communication from Departments of State and Justice enclosing draft bill for consideration of the House). We disagree with CBV that "sensitivity" is no longer an issue. Indeed, an even greater hesitancy may be necessary in situations such as these where nationalized companies are in the process of being privatized. Particularly in the case of the former Communist world, American interests are strongly implicated in seeing that the transition to private enterprise goes smoothly. Moreover, the foreign state may remain financially responsible for any judgments won against a former state-owned entity, especially where the acts at issue occurred when the entity was still under government control.

In any case, according to the documents submitted by CBV, while Russia has approved Novorossiysk's plan to privatize, Novorossiysk has not sold shares or taken any other steps toward privatization. Even after the first shares are distributed, nearly half of the shares will remain with the Russian State Property Fund for a period of three years. We consider an entity at such an early stage of privatization to be sovereign under the FSIA.

**B. Exceptions to Foreign Sovereign Immunity**

■ The statutory provisions governing subject matter and personal jurisdiction over foreign states are codified at 28 U.S.C. § 1330 (1988). Section 1330(a) provides for subject matter jurisdiction whenever a foreign state is not entitled to immunity either under the substantive provisions of FSIA §§ 1605–1607, or under any applicable international agreement. Section 1330(b) provides that personal jurisdiction exists whenever subject matter jurisdiction exists under subsection (a) and service of process has been made under 28 U.S.C. § 1608 (1988). Thus, if none of the exceptions to immunity applies, the court lacks both subject matter jurisdiction and personal jurisdiction. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 485 n. 5, 103 S.Ct. 1962, 1967 n. 5, 76 L.Ed.2d 81 (1983). Subject matter jurisdiction must be ascertained first. *See* House Report 13, *reprinted in* 1976 U.S.C.C.A.N. at 6612.

■ As a sovereign entity under the FSIA, Novorossiysk is entitled to immunity unless one of the statutory exceptions applies. *Saudi Arabia v. Nelson,* —— U.S. ——, ——, 113 S.Ct. 1471, 1476, 123 L.Ed.2d 47 (1993). *Verlinden,* 461 U.S. at 493–94, 103 S.Ct. at 1971–72; *Shapiro v. Republic of Bolivia,* 930 F.2d 1013, 1017 (2d Cir.1991). Once the defendant presents a prima facie case that it is a foreign sovereign, the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, *Baglab Ltd. v. Johnson Matthey Bankers Ltd.,* 665 F.Supp. 289, 293–94 (S.D.N.Y.1987), although the ultimate burden of persuasion remains with the alleged foreign sovereign. *Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285, 289 n. 6 (5th Cir.1989).

CBV argues that Novorossiysk, if found to be a sovereign entity, is not entitled to sovereign immunity under two exceptions to the FSIA. First, CBV contends that Novorossiysk has waived its immunity under 28 U.S.C. § 1605(a)(1) (1988), the waiver exception, by agreeing to arbitrate its dispute with CISA; second, CBV asserts that

the arbitration exception, 28 U.S.C. § 1605(a)(6) (Supp. III 1991), also deprives Novorossiysk of immunity.

Section 1605 provides in pertinent part:
(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

(1) in which the foreign state has waived its immunity either explicitly or by implication,

. . . . .

or

(6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States ... if ... (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards....

28 U.S.C. § 1605 (1988 & Supp. III 1991).

### 1. *The Waiver Argument*

■ The waiver exception permits federal courts to assert jurisdiction over any foreign sovereign that waives its immunity "either explicitly or by implication." 28 U.S.C. § 1605(a)(1). The House Report which accompanied the FSIA listed three examples of implicit waivers: when (1) a foreign state has agreed to arbitrate in another country; (2) a foreign state has agreed that the law of a particular country shall govern; or (3) a foreign state has filed a responsive pleading but has failed to raise the defense of sovereign immunity. *See* House Report at 18, *reprinted in* U.S.C.C.A.N. at 6617.

■ In *Zernicek v. Petroleos Mexicanos*, 614 F.Supp. 407, 411 (S.D.Tex.1985), *aff'd*, 826 F.2d 415 (5th Cir.1987), *cert. denied*, 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988), the court noted that courts have interpreted the waiver provision narrowly: "most courts have refused to find an implicit waiver of immunity to suit in American courts from a contract clause providing for arbitration in a country other than the United States." Moreover, it is rare for a court to find that a country's waiver of immunity extends to third parties not privy to the contract. *Id.* (citing cases). When the case involves an implied waiver, we think that a court should be even more hesitant to extend the waiver in favor of third parties. We agree with these courts that such a waiver will not be implied absent strong evidence of the sovereign's intent. In *Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fidelity, Ltd.*, 689 F.Supp. 1340, 1351 (S.D.N.Y.1988), the court warned that a broader interpretation "would result in a vast increase in the jurisdiction of the federal courts over matters involving sensitive foreign relations." Because of these concerns, an agreement to arbitrate in a foreign country, without more, ought not to operate as a waiver of sovereign immunity in United States courts, especially in favor of a non-party to the agreement. Thus, CBV may not depend on Novorossiysk's agreement to arbitrate with CISA in London to show that the Soviet entity had impliedly waived its immunity to jurisdiction in the United States.

### 2. *The Arbitration Exception*

■ Section 1605(a)(6)(B) of the FSIA provides an exception to sovereign immunity in cases where a foreign state has agreed to arbitrate and the arbitration agreement is or may be governed by a treaty signed by the United States calling for the recognition and enforcement of arbitral awards.[4] CBV argues that it may

---

**4.** As stated by Senator Mathias, the main sponsor of the bill to amend the FSIA to provide for this exception, "unless the arbitration agreement is enforceable, the arbitration is meaning-

less.... This amendment will reassure businesses that the international arbitration process will work. It does so by amending the FSIA to say that an agreement to arbitrate constitutes a

enforce the arbitration clause contained in the Charter Party against Novorossiysk as a third party beneficiary to the Charter Party, and that this clause is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 3 (the "Convention").

The United States became a party to the Convention in 1970 and Congress soon enacted implementing legislation, codified as Chapter II of the Federal Arbitration Act, 9 U.S.C. §§ 201–208 (1988). Congress vested federal district courts with original jurisdiction over any action or proceeding "falling under the Convention," having deemed such an action "to arise under the laws and treaties of the United States." 9 U.S.C. § 203. *See also Dworkin–Cosell Interair Courier Serv., Inc. v. Avraham*, 728 F.Supp. 156, 158 (S.D.N.Y.1989) (the Convention "vests United States' district courts with original jurisdiction ... over actions concerning '[a]n arbitration agreement ...'"). Furthermore, the statute states that "[a]n arbitration agreement ... arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, *falls under* the Convention." 9 U.S.C. § 202 (emphasis added).[5]

■ As the 9th Circuit stated in *Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc.*, 887 F.2d 1357, 1362 (9th Cir.1989), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1319, 108 L.Ed.2d 494 (1990), three basic requirements must be met for a district court to find jurisdiction under the Convention: "the award (1) must arise out of a legal relationship (2) which is commercial in nature and (3) which is not entirely domestic in scope." If a district court finds that these requirements are met, it must order arbitration unless it finds the agreement "null and void, inoperative or

incapable of being performed." Convention, Article II(3).

■ As the Supreme Court observed in *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 2457 n. 15, 41 L.Ed.2d 270 (1974),

[t]he goal of the Convention, and the principal purpose underlying the American adoption and implementation of it, was to encourage recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

Thus, the Convention should be broadly interpreted to effectuate the goals of the legislation. Moreover, when the Convention is read together with the FSIA's arbitration exception, which gives jurisdiction if an arbitration agreement "is or *may be* governed" by a treaty, 28 U.S.C. § 1605(a)(6)(B) (emphasis added), it evinces a strong legislative intent to provide enforcement for such agreements. We agree with CBV that the Convention is exactly the sort of treaty Congress intended to include in the arbitration exception. If the alleged arbitration agreement exists, it satisfies the requirements for subject matter jurisdiction under the Convention and FSIA.

■ We believe the district court in this case erred in deciding that it could not assess CBV's third party beneficiary argument because it did not have jurisdiction to make this initial determination. Rather than considering the allegations to see if they gave the court subject matter jurisdiction, the court stated that "regardless of the merits," the contractual arguments could not be addressed. According to the court, it lacked subject matter jurisdiction because there was no arbitration agreement. *Cargill International S.A.*, 1992 WL 42194, at *5, 1992 U.S.Dist.LEXIS

waiver of immunity in an action to enforce that agreement or the resultant award." 131 Cong. Rec. S5369 (daily ed. May 3, 1985) (Statement of Sen. Mathias).

5. 9 U.S.C. § 206, a section of the legislation implementing the Convention, gives a district court the power to compel arbitration in accordance with the agreement, even if the site of arbitration is outside of the United States. Novorossiysk does not contest this power.

2329, at *15–16. We find, however, that the district court was required to weigh the contractual arguments before it could determine that no arbitration agreement existed.

" 'Jurisdiction to determine jurisdiction' refers to the power of a court to determine whether it has jurisdiction over the parties to and the subject matter of a suit. If the jurisdiction of a federal court is questioned, the court has the power and the duty, subject to review, to determine the jurisdictional issue." 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3536 at 535 (2d ed. 1984). *See also Gould v. Pechiney Ugine Kuhlmann*, 853 F.2d at 451 ("[T]he district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction.").[6]

 This is equally true in determining subject matter jurisdiction under the FSIA. As the Supreme Court noted in *Verlinden*, 461 U.S. at 493–94, 103 S.Ct. at 1971–72 (1983),

[t]he statute must be applied by the district courts in every action against a foreign sovereign, since subject-matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity.... At the threshold of every action in a district court against a foreign state, therefore, the court must satisfy itself that one of the exceptions applies—and in doing so it must apply the detailed federal law standards set forth in the Act.

Thus, the district court must look at the substance of the allegations to determine jurisdiction. In resolving the jurisdictional dispute, the district court must review the pleadings and any evidence before it, such as affidavits. *Forsythe*, 885 F.2d at 289 n. 6. *See also Bowyer*, 875 F.2d at 635 ("District courts properly may look beyond the complaint's jurisdictional allegations and

view whatever evidence has been submitted to determine whether in fact subject matter jurisdiction exists.") The district court, if necessary, may proceed to a trial on this issue. The Federal Arbitration Act, which applies to actions under the Convention where the two are not in conflict, 9 U.S.C. § 208, authorizes a summary trial to determine whether an agreement to arbitrate actually exists. 9 U.S.C. § 4 (1988). *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 802 F.Supp. 1069, 1072 (1992). *See also Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673, 676–78 (2d Cir.1972), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

 CBV alleges that CISA and Novorossiysk intended to make CBV a third party beneficiary of the Charter Party and in particular of its arbitration clause. Thus, to determine whether subject matter jurisdiction existed, the district court ought to have determined whether, if the facts as alleged by CBV are true, the arbitration agreement in the Charter Party was intended to benefit CBV. As we noted in *A/S Custodia v. Lessin Int'l, Inc.*, 503 F.2d 318, 320 (2d Cir.1974), a Charter Party is just a species of contract, subject to the same rules of interpretation as any other binding agreement. *Custodia*, like this case, overturned a denial by the district court of a motion to compel arbitration based upon a finding, without an evidentiary hearing, that no arbitration agreement existed.

 In order to enforce the agreement as a third party beneficiary, CBV must show that " 'the parties to that contract intended to confer a benefit on [it] when contracting; it is not enough that some benefit incidental to the performance of the contract may accrue to [it].' " *McPheeters v. McGinn, Smith and Co., Inc.*, 953 F.2d 771, 773 (2d Cir.1992), quoting *Kyung Sup Ahn v. Rooney Pace, Inc.*, 624 F.Supp. 368, 371 (S.D.N.Y.1985) (in turn quoting *Vaz-*

---

**6.** Normally, this factual resolution will be reviewed under the clearly erroneous standard, *Bowyer v. United States Dept. of Air Force*, 875 F.2d 632, 636 (7th Cir.1989), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990);

in this case, however, the district court erroneously concluded that it did not have jurisdiction to assess the jurisdictional allegations. We review this legal error *de novo*.

*man, S.A. v. Fidelity Int'l Bank,* 418 F.Supp. 1084, 1086 (S.D.N.Y.1976)). We note that if CBV is found to be a third party beneficiary to the Charter Party, it may be proper for the district court to enforce the arbitration agreement against Novorossiysk. *See Progressive Cas. Ins. Co.,* 802 F.Supp. at 1074 ("It is generally held by cases decided under the ... Convention that an enforceable arbitration clause may be included in a document or form incorporated by reference in the parties' contract.") Because the parties have not adequately addressed this issue in their briefs, however, we leave the arguments to them and the district court. We note in addition that Novorossiysk has preserved its objections to personal jurisdiction.

## CONCLUSION

In light of the above discussion, we reverse and remand for further proceedings.