**EAGLET CORPORATION LIMITED, Plaintiff,**

v.

**BANCO CENTRAL DE NICARAGUA, Defendant.**

**No. 93 CIV. 1718 (SWK).**

United States District Court, S.D. New York.

Dec. 7, 1993.

Wasche, Sheinbaum & O'Regan, P.C. by John R. Foster, New York City, for plaintiff.

Cleary, Gottlieb, Steen & Hamilton by George Weisz, New York City, for defendant.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

On August 4, 1992, plaintiff Eaglet Corporation Limited ("Eaglet") obtained a default judgment against defendant Banco Central De Nicaragua ("Banco Central" or "BCN") in the High Court of London. On March 18, 1993, plaintiff brought this action, seeking an American judgment on the English default, apparently to execute on Banco Central's property in the United States. Banco Central now moves to dismiss the complaint, pursuant to Rules 12(b)(1) and 12(b)(2) of the

Federal Rules of Civil Procedure, on the grounds that this Court does not have either subject matter jurisdiction over the action or personal jurisdiction over the defendant, pursuant to the Federal Sovereign Immunity Act of 1976 (the "FSIA" or the "Act"), 28 U.S.C. § 1603 *et seq.* For the reasons set forth below, defendant's motion is granted, and this action is dismissed with prejudice.

## BACKGROUND [1]

On August 27, 1990, Eaglet, a corporation organized under the laws of Guernsey in the Channel Islands, and Banco Central, the Central Bank of Nicaragua, entered into a debt restructuring agreement pursuant to which Banco Central acknowledged a debt to Eaglet and agreed to make seventeen monthly payments to Eaglet, beginning in August 1990 and ending in December 1991 (the "Agreement"). The Agreement provided that (1) all payments by Banco Central were to be made to Eaglet's account in Madrid, Spain, *see* Agreement at ¶ 4; (2) the Agreement would be "governed by English law," *id.* at ¶ 5; and (3) "[Banco Central] submits to the nonexclusive jurisdiction of the English High Court of Justice with respect to any proceeding presented by Eaglet Corporation Ltd. arising from or in connection with this Agreement," *id.*

Eaglet claims that Banco Central breached the Agreement by failing to make all of the required payments. Specifically, Eaglet contends that Banco Central made only five payments, up to and including December 24, 1990. As of February 24, 1991, Banco Central allegedly owed Eaglet $20,273,860.00 principal plus accrued interest.

Accordingly, on June 4, 1992, Eaglet brought suit for breach of contract in the English High Court. Process was served on Banco Central by the Nicaraguan judicial authorities pursuant to letters rogatory. Banco Central failed to appear, however,

and, on August 4, 1992, Eaglet obtained a default judgment against Banco Central in the amount of $22,750,114.20, plus £ 248.00 in costs.[2] Subsequently, on March 18, 1993, Eaglet brought suit in this Court, seeking to obtain an American judgment on the English default. Presently before the Court is defendant's motion to dismiss the complaint, pursuant to 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure, on the grounds that (1) this Court lacks subject matter jurisdiction over the claims of Eaglet; and (2) this Court lacks personal jurisdiction over Banco Central.

## DISCUSSION

■ The FSIA is the exclusive means by which United States courts may exercise subject matter jurisdiction over suits involving foreign states and their instrumentalities. *Saudi Arabia v. Nelson,* — U.S. —, —, 113 S.Ct. 1471, 1476, 123 L.Ed.2d 47 (1993); *Kao Hwa Shipping Co., S.A., v. China Steel Corp.,* 816 F.Supp. 910, 913 (S.D.N.Y.1993).[3] The Act provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 and 1607 of this chapter." 28 U.S.C. § 1604. Therefore, any exercise of this Court's jurisdiction must fall within a specific statutory exception set forth in the Act.

This Court need not, however, examine the applicability of each of the enumerated exceptions set forth in Sections 1605 and 1607 of the FSIA. In fact, the issue presented to this Court by defendant's motion to dismiss is considerably narrow, as the parties have already agreed on the following: (1) defendant Banco Central is a "foreign state," as defined by 28 U.S.C. § 1603(a); (2) Banco Central is entitled to sovereign immunity from suits in the United States under the provisions of the FSIA unless one of the

---

**1.** The following undisputed facts are taken from the Complaint, dated March 18, 1993, the plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss the Complaint, dated August 13, 1993 ("Opp.Papers"), the defendant's Motion to Dismiss the Complaint, dated July 23, 1993, and the defendant's Memorandum of Law in Support of its Motion to Dismiss the Complaint, dated July 23, 1993.

**2.** As of August 4, 1992 the U.S. dollar equivalent of £ 248.00 was $476.28.

**3.** "Foreign states" include "agencies or instrumentalities" of foreign states. *See* 28 U.S.C. § 1603(a) (definitions).

exceptions to such immunity, set forth in 28 U.S.C. § 1605(a), is applicable; (3) Section 1605(a)(1) of the FSIA is the only section which has any applicability to this case; and (4) any waiver of sovereign immunity by Banco Central is found in the language of Article 5 of the Agreement.[4]  Accordingly, the Court need only examine the applicability of the exception to immunity enumerated in Section 1605(a)(1).

Section 1605(a)(1) of the FSIA provides that:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or States in any case ... in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver.

Pursuant to this section, a foreign state may waive its immunity either explicitly or implicitly.  Explicit waiver is generally found when the contract language itself clearly and unambiguously states that the parties intended waiver, and therefore, adjudication in the United States. *See, e.g., Proyecfin de Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.,* 760 F.2d 390, 393 (2d Cir.1985).  In *Proyecfin,* for example, the Second Circuit held that the parties expressly waived immunity to suit in New York where the unambiguous language of the contract stated that, "Borrower ... hereby waives such immunity to the full extent permitted by the laws of such jurisdiction and, in particular, to the intent [sic] that in any proceedings taken in New York the foregoing waiver of immunity shall have effect ..." *Id.*

■ In this case, the parties agree that, if Banco Central waived its immunity to suit in the United States, it did so in the language of Article 5 of the Agreement, which reads:

> This Agreement is governed by English law and therefore BCN submits to the nonexclusive jurisdiction of the English High Court of Justice with respect to any proceeding presented by Eaglet Corporation Ltd. arising from or in connection with this Agreement and consents to the enforcement of any preventative measure and at the commencement of any future proceeding motivated by the breach of obligations adopted in this Agreement.

Plaintiff contends that the defendant explicitly waived immunity in United States courts when it agreed that English law, *i.e.,* foreign law, would govern the Agreement.  Eaglet also contends that the language of Article 5, particularly the words "nonexclusive jurisdiction," and defendant's consent to the "commencement of any future proceeding motivated by the breach of obligations adopted in this Agreement" signifies defendant's recognition that a future proceeding may be brought in any jurisdiction, including that of the United States. *See* Opp.Papers at 5–6. The Court finds, however, that the language of the Agreement does not constitute an explicit waiver of immunity, as there is no language clearly evincing the parties' intent to waive immunity and adjudicate matters in the United States.

In the alternative, plaintiff contends that Article 5 of the Agreement constitutes an implied waiver.  To determine whether Banco Central has implicitly waived immunity to suit in this Court, the Court looks to the House Report accompanying the passage of the FSIA.  The legislative history narrows the scope of implied waiver by delineating only three examples of waiver: (1) in cases where a foreign state has agreed to arbitration in another country; (2) where a foreign state has agreed that the law of a particular country should govern a contract; and (3) where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity. *See* H.R.Rep. No. 1487, 94th Cong., 2d Sess., 18 (1976), *reprinted in* 1976 U.S.S.C.A.N. 6604, 6617.[5]  Courts have been reluctant to extend the bases of implicit waiver beyond these three examples. *Shapiro v. Republic of Bolivia,* 930 F.2d 1013, 1017 (2d Cir.1991)

---

4. *See* Opp.Papers at 2, 4; *see also* defendant's Reply Memorandum of Law in Support of its Motion to Dismiss the Complaint, dated August 20, 1993, at 1–2.

5. The third example is not in contention in this case.

("Federal courts have been virtually unanimous in holding that the implied waiver provision of Section of 1605(a)(1) must be construed narrowly."); *Colonial Bank v. Compagnie Generale Maritime et Financiere*, 645 F.Supp. 1457, 1461 (S.D.N.Y.1986).

Moreover, courts have even construed these three examples narrowly. *See Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1017 (2d Cir.1993) (interpreting the waiver provision narrowly); *Kao Hwa Shipping Co., S.A. v. China Steel Corp.*, 816 F.Supp. at 916–17; *L'Europeenne de Banque v. La Republica de Venezuela*, 700 F.Supp. 114, 123 (S.D.N.Y.1988). As this Court noted in *Maritime Ventures Int'l, Inc. v. Caribbean Trading & Fidelity, Ltd.*, 689 F.Supp. 1340, 1351 (S.D.N.Y.1988):

> A literal interpretation of the House Report would subject a foreign government to jurisdiction in the United States whenever it agreed to be governed by the laws or arbitrate in the forum of any country other than its own, even when the contract makes no mention of the United States. This would result in a vast increase in the jurisdiction of the federal courts over matters involving sensitive foreign relations.

*See also Fickling v. Commonwealth of Australia*, 775 F.Supp. 66, 70 (E.D.N.Y.1991) (noting that courts demand strong evidence of a foreign sovereign's intent to waive immunity before finding a waiver by implication).[6]

Thus, while the legislative history of the Act states that implicit waiver is found where a foreign state has agreed to arbitrate in another country, *see* H.R.Rep. No. 1487, 94th Cong., 2d Sess., 18 (1976), *reprinted in* 1976 U.S.S.C.A.N. 6604, 6617, most courts have refused to find an implicit waiver of immunity to suit in United States courts by reason of contractual language consenting to jurisdiction in a country other than the United States. *See Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d at 1017; *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 500 F.Supp. 320, 323, n. 3 (S.D.N.Y.1980) ("An agreement that the contract will be ... submitted to arbitration in another country does not reflect an intention to waive governmental immunity to actions brought against the foreign state in the courts of the United States."), *rev'd on other grounds*, 647 F.2d 300 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982); *see also Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th Cir.1985) ("[M]ost courts have refused to find an implicit waiver of immunity to suit in American courts from a contract clause providing for arbitration in a country other than the United States.") (footnote omitted); *Ohntrup v. Firearms Center Inc.*, 516 F.Supp. 1281, 1285 (E.D.Pa.1981) ("[A] waiver of immunity by a state as to one jurisdiction cannot be interpreted to be a waiver as to all jurisdictions."), *aff'd*, 760 F.2d 259 (3d Cir.1985).

Similarly, most courts have refused to find implicit waiver to suit in the United States where the parties merely agreed that another foreign country's law would govern. In *Verlinden B.V. v. Central Bank of Nigeria*, 488 F.Supp. 1284, 1302 (S.D.N.Y.1980), *aff'd*, 647 F.2d 320 (2d Cir.1981), *rev'd on other grounds*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983), for example, this Court found that when a foreign state agreed with another non-American party to submit their disputes to the laws of a third country, it did not thereby waive its immunity to the jurisdiction of the courts of the United States. *See also Kao Hwa Shipping Co., S.A. v. China Steel Corporation*, 816 F.Supp. at 916–

---

**6.** The Court notes that, in *Proyecfin De Venezuela, S.A. v. Banco Indus. de Venezuela, S.A.*, 760 F.2d at 393, n. 2 (2d Cir.1985), the Second Circuit stated that Congress intended that the provision for implicit waivers be given a "broad reading." Besides the fact that the statement was *dictum*, the parties in *Proyecfin* had agreed to contract language that rendered an explicit waiver of immunity to any proceedings taken in New York. Accordingly, the question of what circumstances might constitute implicit waiver was not squarely raised by the Second Circuit in that case. More-over, in a more recent Second Circuit opinion, the court adopted a narrow reading of the implied waiver provision. *See Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d at 1017 (finding that an agreement to arbitrate in a foreign country ought not to operate as a waiver of sovereign immunity in United States courts); *see also L'Europeenne de Banque v. La Republica de Venezuela*, 700 F.Supp. at 123, n. 9 (S.D.N.Y.1988) (noting that the language in *Proyecfin* was *dictum* and finding that public policy demands a narrow reading of Section 1605(a)(1)).

17 (holding that defendant did not waive immunity to United States courts by virtue of a contract provision that expressly stated that the contract would be governed by Japanese law).

The fact that the parties here agreed to submit to the laws and the jurisdiction of England thus does not constitute an implied waiver of Banco Central's immunity in the United States. Furthermore, while the Court notes that the Agreement at issue contains the language "nonexclusive jurisdiction," such language is not a sufficient indicia of the parties intent to waive immunity.[7]

Accordingly, the Court finds that it does not have subject matter jurisdiction over this matter. Furthermore, as the Court lacks subject matter jurisdiction over this action, it finds that it also lacks personal jurisdiction over Banco Central. *See* 28 U.S.C. § 1330(b).

### CONCLUSION

For the reasons set forth above, defendant's motion to dismiss, pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(2), is granted.

SO ORDERED.

---

7. Plaintiff contends that the principles of comity require the Court to exercise jurisdiction in this action. Although the Court recognizes the importance of enforcing a foreign judgment, the principles of comity do not outweigh the statuto-ry mandate of the FSIA. In fact, the Court finds that it would be incongruous with those principles to drag a foreign state into a jurisdiction in which it never contemplated arbitration.