**COMMERCIAL CORPORATION SOVRYBFLOT, Plaintiff,**

v.

**CORPORACION DE FOMENTO DE LA PRODUCCION, Defendant.**

No. 96 CIV. 5317(CBM).

United States District Court, S.D. New York.

Oct. 14, 1997.

---

Dorsey & Whitney, LLP., New York, NY, for Plaintiff.

Jonathan I. Blackman, Cleary, Gottlieb, Steen & Hamilton, New York, NY, for Defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Defendant Corporacion de Fomento de la Produccion ("CORFO") has moved to dismiss this case on the grounds that the court lacks subject matter jurisdiction under the Foreign Sovereign Immunities Act or, in the alternative, under the doctrine of *forum non conveniens*. The court grants the motion as to the Foreign Sovereign Immunities Act and dismisses the case for lack of subject matter jurisdiction. Because the court lacks jurisdiction, it does not address the *forum non conveniens* claim.

## BACKGROUND

This is a breach of contract case in which plaintiff Commercial Corporation Sovrybflot ("Sovrybflot"), a privately-owned Russian corporation which controls many of Russia's fishing ship owners, has alleged that defendant CORFO has contrived to avoid payment on amounts allegedly due on contracts for the leasing of Soviet fishing vessels for fishing expeditions off the coast of Chile in the early 1970s. Defendant CORFO is a quasi-governmental Chilean entity which is charged with investing in and developing key industries in Chile.

In 1971, the governments of Chile and the former Union of Soviet Socialist Republics ("USSR") entered into a Treaty of Coopera-

tion for the Development of Chilean Fisheries. As part of that agreement, Sovrybflot leased fishing vessels to Arauco, a private Chilean corporation allegedly owned and controlled by CORFO which has since become bankrupt. Plaintiff alleges that it was never reimbursed for the leasing of the ships. In 1973, Sovrybflot and Arauco made a supplemental agreement that extended Arauco's time to repay the debt in exchange for CORFO's willingness to guarantee the debt and which provided for the delivery of fishmeals to plaintiff as payment-in-kind. In addition, Sovrybflot and Arauco made a separate leasing agreement in 1973. Once again, however, Sovrybflot was allegedly never paid. Following the right-wing military coup in Chile in September 1973, the relations between the two countries broke down. Plaintiff alleges that because of the severed international relationship, an anticipated Joint Chilean–Soviet Commission never came into existence, an omission which plaintiff alleges deprived it of its forum in which to press its claims. However, a 1980 agreement between representatives of plaintiff and defendant allegedly acknowledged the debt owed from Arauco to Sovrybflot.

## DISCUSSION

### I. The Foreign Sovereign Immunities Act

The Foreign Sovereign Immunities Act "establishes a comprehensive framework for determining whether a court in this country, state or federal, may exercise jurisdiction over a foreign state .... [u]nder the Act, a 'foreign state shall be immune from the jurisdiction of the courts unless one of several statutory exceptions applies.'" *Republic of Argentina v. Weltover*, 504 U.S. 607, 610–611, 112 S.Ct. 2160, 2164, 119 L.Ed.2d 394 (1992) (quoting 28 U.S.C. § 1604); *see also NYSA–ILA Pension Trust Fund v. Garuda Indonesia*, 7 F.3d 35, 38 (2d Cir.1993) (a federal court is divested of subject matter jurisdiction if the foreign sovereign immunity provisions of the FSIA are applicable); *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993) (federal courts lack personal or subject matter jurisdiction if no exception applies). "Once the defendant presents a prima facie case that it is a for-

eign sovereign, the plaintiff has the burden of going forward with showing that, under the exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign." *Drexel Burnham Lambert Group, Inc. v. Committee of Receivers for A.W. Galadari et al.,* 12 F.3d 317, 325 (2d Cir.1993) (citations omitted).

## II. The Explicit Waiver Exception

■■■ The parties do not dispute that defendant CORFO, as a quasi-governmental Chilean entity, is a foreign sovereign. They disagree over whether Chile has waived its immunity in commercial contracts such as the one before the court. Under 28 U.S.C. § 1605(a)(1), a foreign state shall not be immune from the jurisdiction of the courts if "the foreign state has waived its immunity either explicitly or by implication [1], notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver." *Drexel Burnham Lambert Group, Inc.,* 12 F.3d at 324. "Explicit waiver is generally found when the contract language itself clearly and unambiguously states that the parties intended waiver, and therefore adjudication, in the United States." *Eaglet Corp. Ltd. v. Banco Central De Nicaragua,* 839 F.Supp. 232, 234 (S.D.N.Y.1993).

According to plaintiff Sovrybflot, "no immunity defense exists here [because] the Republic of Chile *explicitly waived* immunity from jurisdiction [ ] in disputes … arising from commercial contracts in which the parties agreed to submit to the jurisdiction of a foreign tribunal." *Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss the Compl.,* 2 (emphasis added). Plaintiff argues that the Chilean Decree Law No. 2,349 of 1978 ("the Decree") amounts to an explicit waiver. The Decree purported to establish regulations in international agreements for the public sec-

tor. *See Etcheberry Aff., Ex. B.* The relevant language of the Decree reads as follows:

Stipulations intended to subject to foreign law international contracts whose main objective concerns transactions or operations of an economic or financial nature, executed or to be executed by international or foreign agencies, institutions, or enterprises whose main center of operations is located abroad with the Chilean State or with its agencies, institutions or enterprises, are declared to be valid.

Stipulations by which disputes arising out of such contracts have been or are submitted to the jurisdiction of foreign courts including courts of arbitration contemplated in pre-established mechanisms of arbitration or in the respective contract, as well as stipulations by which special domiciles have been or are established and agents abroad have been or are designated for purposes of the contract, are likewise valid.

By the submission to the jurisdiction of a foreign court, the right to invoke immunity from jurisdiction will cease, except in cases of express stipulation to the contrary. *Id.,* ¶¶ 1—2, 4.

According to plaintiff, these provisions preclude a "Chilean governmental entity" from "rais[ing] sovereign immunity as a defense in any dispute arising out of a commercial contract in which it has agreed to submit disputes to the jurisdiction of a foreign tribunal." *Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss the Compl.,* 8—9. Because the 1971 agreement contracted to refer disputes to arbitrations in the country against which the complaint was made (i.e., either Chile or the former U.S.S.R.), and because the 1973 agreement anticipated the creation of a Chilean–Soviet Joint Fishing Commission for dispute resolution, plaintiff argues that the waiver language of the Decree cited above is implicated because Chile had agreed in the respective agreements to bring a claim

---

1. Plaintiff Sovrybflot does not allege that defendant CORFO has waived its immunity by implication. Waiver by implication exists in only three, narrowly construed situations: (1) the foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that the law of a particular country should govern a con-

tract; (3) a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity. *See, e.g., Cargill Int'l S.A. v. M/T Pavel Dybenko,* 991 F.2d 1012, 1017 (2d Cir.1993) (quoting the House Report accompanying the passage of the FSIA).

in the former U.S.S.R. and to submit to an inter-governmental entity. Plaintiff argues that a waiver of immunity "which applies to any jurisdiction where suit may be brought satisfies the explicit waiver requirements of [the Foreign Sovereign Immunities Act]." *Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss the Compl.*, 10. Plaintiff's argument is problematic, and ultimately fails, for two reasons.

First, to ascribe the intention of a general, universal waiver into statutory language which could also be read more narrowly fails to comply with judicial reluctance to find waiver absent unambiguous language. *See, e.g., Eaglet Corp. Limited v. Banco Central De Nicaragua*, 839 F.Supp. 232, 234 (S.D.N.Y.1993), *aff'd*, 23 F.3d 641 (2d Cir. 1994). The legislative language of the Decree is also open to the interpretation that Chile may not raise an immunity defense in a foreign country *with which it has an agreement.*

Second, federal case law does not support the proposition that general language prohibiting waivers in cases of pre-existing contracts which anticipate foreign resolution renders a country amendable to suit anywhere in the world. Plaintiff cites two cases for this proposition. In *Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A.*, 760 F.2d 390 (2d Cir.1985), a Venezuelan corporation (Proyecfin) brought suit in New York against a bank (BIV) which was almost entirely owned by the Venezuelan government. The bank had undertaken to act as trustee for all monies received from a consortium of Middle Eastern banks which had lent money to the plaintiff corporation. Plaintiff's suit alleged wrongful refusal to make advances on the contract and other breaches of contract. *Id.* at 390—392. Defendant's invocation of sovereign immunity was rejected by the court because of an express waiver in the loan agreement which stated, *inter alia*, "[t]o the extent that [the parties] may in any jurisdiction claim for itself or its assets immunity from suit ... such [parties] waive[ ] such immunity to the full extent permitted by the laws of such jurisdiction and, in particular, to the extent that in any proceedings taken in New York the foregoing waiver of immunity shall have effect under and be construed in accordance with the United States Foreign Sovereign Immunities Act." *Id.* at 393. This case is distinguishable from the present matter because the parties' intention to be amenable to suit in New York was clearly expressed.

The other case cited by plaintiff Sovrybflot, *National Union Fire Insurance Company of Pittsburgh v. People's Republic of Congo*, 729 F.Supp. 936 (S.D.N.Y.1989), is not of real precedential value because the defendant in that case did not dispute that it had waived sovereign immunity. *Id.* at 940 ("the Congo has not disputed that it waived its sovereign immunity"). Thus, the court did not reach the question of whether a seemingly worldwide waiver of jurisdictional immunity (i.e., language in that case's credit agreement referring to the jurisdiction of "any court") was a sufficient express waiver in New York. There is simply no authority holding that foreign statutory language which enables waivers in certain circumstances means unequivocally that waivers are compelled in any jurisdiction where suit can be brought.

### III. Conclusion

Sovrybflot was unable to present unambiguous evidence of the 1978 Decree's applicability to a situation like the one before the court, a situation in which the chosen jurisdiction has no relationship to the events giving rise to the cause of action. Therefore, for the reasons stated above, defendant CORFO's 12(b)(1) motion is granted and the case is dismissed.