OPINION OF THE COURT
Thomas W. Keegan, J.
Defendant, Gateway State Bank, now known as Staten Island Savings Bank (Bank), makes this motion to dismiss the verified complaint, pursuant to CPLR 3211 (a), upon the following *487 grounds: (1) plaintiff lacks standing to bring the claim; (2) plaintiff fails to state a claim upon which relief can be granted; and (3) the claims are barred, in whole or in part, by the Statute of Limitations. Defendant further submits that in the event that this motion to dismiss is not granted, venue should be moved from Albany County.
Plaintiff, Lawyers’ Fund for Client Protection of the State of New York (Fund), brought this suit as assignee of infant Michele Elman. As assignee and subrogee, the Fund satisfied Elman’s claim for $69,153.54 against her attorney, John Gus-sow, and now stands in the shoes of the injured party and is entitled to the subrogation of all Elman’s rights, claims, demands and causes of action.
Attorney Gussow was retained by Maria Guttaduaria-Elman, M.D., Michele Elman’s aunt and guardian, as well as trustee of a trust set up for Michele’s benefit. The trust was to be funded with the proceeds of the life insurance policy of Michele Elman’s slain mother and Gussow was to represent the interests of Michele in obtaining these proceeds.
In February 1990, Prudential Insurance Company forwarded two life insurance checks to Gussow, which, in the aggregate, totaled $69,153.54 and were made payable to "Maria Guttaduaria-Elman, M.D. as trustee for the benefit of Michele Elman”. Gussow endorsed the checks in Dr. Guttaduaria-Elman’s name without her knowledge or consent and deposited them into his attorney escrow account at the Bank. Gussow then proceeded to draw large sums of money from this escrow account for his own personal use to the point where the entire account was nearly depleted. As a result, Michele Elman’s trust never received the checks or their proceeds.
Shortly before it was discovered that these monies had been diverted by Gussow, he was found dead, the victim of an apparent accidental electrocution. Once Dr. Guttaduaria-Elman discovered that Gussow had used the money for his own personal benefit, she filed a claim with the Fund, seeking reimbursement of the $69,153.54. The Fund satisfied the claim and is now the subrogee and assignee of all claims, rights, demands and causes of action against Gussow and any other party responsible for the losses incurred, including the Bank.
In first turning to the procedural bars asserted by the Bank, the court finds defendant’s argument that Dr. Guttaduaria-Elman has no standing to sue the Bank because she never actually or constructively possessed the checks totally unavailing. It is clear that Attorney Gussow was acting *488 as an authorized agent of Dr. Guttaduaria-Elman when he received the checks from the insurance company. Thus, the checks were constructively delivered to Dr. Guttaduaria-Elman when received by Gussow. It is also painfully clear that Gus-sow lacked the authority to endorse the checks in Dr. Guttaduaria-Elman’s name and collect their proceeds. Despite defendant’s protestations, the court has no difficulty with plaintiff arguing that Dr. Guttaduaria-Elman constructively possessed the checks through her authorized agent at one point, and that that same "agent” was unauthorized to forge her signature at another.
Furthermore, the instant action is not time barred because CPLR 208 applies to toll the ordinary three-year Statute of Limitations available in conversion and other tort actions when the party whose funds were converted, as here, is an infant. (CPLR 208.) Because the Fund stands in the shoes of the infant harmed in this case, the toll applies. Defendant’s reliance on Baez v New York City Health & Hosps. Corp. (80 NY2d 571) is misplaced. Quite simply, this is not a wrongful death action on behalf of an infant, where a personal representative is the only party that is authorized to bring suit, rendering the tolling provisions of CPLR 208 inapplicable.
As to plaintiff’s first cause of action sounding in conversion, defendant Bank contends that Gussow had the authority to sign the checks; that the Bank in good faith believed that he possessed this authority and that as a result, the plaintiff cannot assert claims of forgery or conversion. The court finds this argument to be without merit. As previously stated, Gussow possessed neither the apparent authority nor the implied authority to endorse and/or collect the proceeds of the checks. (See, Lawyers’ Fund for Client Protection v Manufacturers Hanover Trust Co., 153 Misc 2d 360, 361.)
"[A]pparent authority [arises where] words or conduct of the principal, communicated to a third party, [lead] to the appearance and belief that the agent possesses authority to enter into a [particular] transaction.” (Hallock v State of New York, 64 NY2d 224, 231.)
Here, Dr. Guttaduaria-Elman, the guardian-trustee, as principal, never had any contact with the third-party Bank; therefore, any belief by the Bank that Gussow possessed authority did not arise from conduct of the principal. Furthermore, Dr. Guttaduaria-Elman owed no duty to the Bank. A principal is liable to a third party for an agent’s actions only where the general type of conduct such as forgery may have *489 reasonably been expected. (Lawyers’ Fund for Client Protection v Manufacturers Hanover Trust Co., 153 Misc 2d, supra, at 361.)
In the instant case, it would not have been reasonable for Dr. Guttaduaria-Elman to expect Gussow, in his fiduciary capacity as attorney for the trust, to commit forgery. Therefore, she was not obliged to contact the Bank prior to Gussow’s transaction. (Lawyers’ Fund for Client Protection v Manufacturers Hanover Trust Co., supra.)
Additionally, there is no proof that Gussow possessed implied authority to sign the checks. Whether the Bank used good faith and followed reasonable commercial banking practices cannot be properly determined on this motion.
The Fund’s second, third and fourth causes of action allege that the Bank received and retained the proceeds of the two insurance checks, was unjustly enriched, and breached the debtor/creditor relationship.
Defendant Bank argues that the Fund does not have a cause of action for money had and received nor unjust enrichment because the Bank did not retain the proceeds of the checks for its own account and it did not exercise ownership over the funds. This court does not agree.
Initially, the court notes that the sole criterion on a motion to dismiss a complaint pursuant to CPLR 3211 (a) (7) "is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail [citations omitted]. When evidentiary material is considered, the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one, and, unless it has been shown that a material fact as claimed by the pleader to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, again dismissal should not eventuate [citations omitted].” (Guggenheimer v Ginzburg, 43 NY2d 268, 275.) For a defendant to be successful on a motion to dismiss, the evidence the defendant offers must "establish conclusively that plaintiff has no cause of action.” (Rovello v Orofino Realty Co., 40 NY2d 633, 636.)
First, as argued by the plaintiff, once defendant accepted and negotiated the checks, it had a quasi-contractual obligation to pay only the true owner. Thus, the Bank could be held liable to the payee for the proceeds of those checks. The *490 plaintiffs allegations of the Bank’s refusal to return the money it collected from the payor bank to which it was not legally entitled state a cause of action for money had and received. (See, Hechter v New York Life Ins. Co., 46 NY2d 34, 37.) Likewise, the allegations concerning the Bank’s refusal to return the proceeds of the checks despite plaintiffs demand state a cause of action for unjust enrichment.
Furthermore, given the liberal pleading requirements of CPLR 3026, plaintiffs allegations that the Bank breached its duty or violated the privity between it and plaintiffs subrogee also state a cause of action on an implied contract theory. (Hechter v New York Life Ins. Co., supra.)
Accordingly, defendant Bank’s motion to dismiss the verified complaint is denied, in all respects.
This court now turns to the Bank’s request for a change of venue in the event that its motion to dismiss is denied. Upon review of CPLR 503 (e) and the applicable case law, this court finds that there is indeed a difference between assignment and subrogation. (See, United Community Ins. Co. v Triboro Signal Sta., 160 AD2d 1206, 1207.) CPLR 503 (e) speaks specifically to actions that involve assignments. In the immediate case, there exists an assignment as well as subrogation on the part of the Fund. As such, this court finds CPLR 503 (e) inapplicable to the instant facts and the Bank’s motion for change of venue is also denied.