246 F.Supp.2d 273 (2003)
Brad M. REISS, Plaintiff,
v.
SOCIETE CENTRALE DU GROUPE DES ASSURANCES NATIONALES, a/k/a Societe Centrale du Gan, a/k/a Societe de Gestion de Garanties et de Participations, Union Pour Le Financement D'Immeubles de Societes, Union Industrielle de Credit and Gan S.A., Defendants.
No. 98 CIV. 8302(VM).
United States District Court, S.D. New York.
January 30, 2003.
As Amended February 25, 2003.
*274 Richard E. Haftel, Modlin Haftel & Nathan LLP, Richard E. Haftel, Haftel & Silverman, P.C., New York City, for Plaintiff.
Frederick E. Sherman, Jones, Day, Reavis & Pogue, New York City, for Defendants.

*275 DECISION AND ORDER

MARRERO, District Judge.
Plaintiff Brad M. Reiss ("Reiss") filed this action in 1998 to recover a "finder's fee" allegedly owed to him by defendants Societe Centrale du Groupe des Assurances Nationales ("Societe"), GAN S.A., Union pour le Financement D'Immeubles de Societe ("UIS"), and Union Industrielle de Credit ("UIC"). In earlier proceedings on this matter, GAN S.A. and Societe (hereinafter collectively referred to as "Defendants") moved to dismiss for lack of personal jurisdiction under the New York State long-arm statute, N.Y. C.P.L.R. § 302, and Fed.R.Civ.P. 12(b)(2), and for failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6), which was granted by another court in this District, Reiss v. Societe Centrale du Groupe Des Assurances Nationales, 78 F.Supp.2d 147 (S.D.N.Y.1999) (".Reiss I"), but was vacated and remanded by the Second Circuit to this Court, to which the case was later reassigned, Reiss v. Societe Centrale Du Groupe Des Assurances Nationales, 235 F.3d 738, 747-48 (2d Cir.2000) (".Reiss //"). Defendants have renewed their motion to dismiss the complaint, in this instance under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611, and Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal and subject matter jurisdiction. For the reasons set forth below, an evidentiary hearing is hereby ordered to resolve the factual issues in dispute concerning whether this Court has subject matter jurisdiction over Defendants.

I BACKGROUND[1]
This action concerns Reiss's claim that he is entitled to a fee, pursuant to an oral agreement, for having successfully interested General Electric Capital Corporation ("GECC") in acquiring UIS and UIC. Reiss claims that he entered into the oral agreement with Alain Juliard ("Juliard"), the Chairperson of UIS, to solicit investment in Groupe Percier, a conglomerate of real estate companies, including UIS, which were majority owned by Societe and managed by Juliard, as well as UIC, in exchange for a commission of one percent of the value of the transaction. In his Amended Complaint, Reiss pleads causes of action in breach of contract and quantum meruit. In 1992, the year that the alleged oral contract was first formed, GAN S.A. was a wholly owned subsidiary of Societe, and GAN S.A. wholly owned UIC and 94.47 percent of UIS. In 1997, prior to the sale of UIC and UIS to the GECC, GAN S.A.'s shares of UIC were transferred to Societe.
Defendants filed a motion to dismiss the Amended Complaint pursuant to Fed. R.Civ.P. 12(b)(2) for lack of personal jurisdiction under the New York state longarm statute, N.Y. C.P.L.R. § 302, and Fed.R.Civ.P. 12(b)(6) for failure to state a claim, on the ground that Reiss did not establish that Defendants had authorized Reiss to act as their agent. The court granted Defendants' motion. See Reiss I, 78 F.Supp.2d at 147 (S.D.N.Y.1999). Although given leave to replead, Reiss instead appealed the court's ruling.Thereafter, *276 the docket sheet shows that on January 27, 2000, a Stipulation and Order dismissing the action as against UIS and UIC was "So Ordered" by the court.
On appeal, the Second Circuit vacated the dismissal, remanded for further proceedings consistent with its decision, and instructed the parties to engage in discovery on the issue of subject matter jurisdiction under the FSIA. See Reiss II, 235 F.3d at 747-748.[2] On remand, the case was assigned to this Court.
The factual background of this litigation has been discussed at length by the Second Circuit in Reiss II, 235 F.3d at 739-743; see also Reiss I, 78 F.Supp.2d at 149-152. Given the extensive attention the factual recitation of the case has received, the Court will not repeat what has already been said. However, the Court will describe what has happened from the time the case was remanded, and will repeat key factual information for purposes of clarification and guidance throughout.
As directed by the Second Circuit, Reiss has engaged in further discovery addressing FSIA jurisdiction. Reiss has taken the deposition of Juliard and Mr. Phillipe Rosio ("Rosio"), Chief Financial Officer of UIS.[3] However, Guy de Chavanne ("de Chavanne"), the Director General of GAN S.A. and Societe, who the Second Circuit suggested would be a helpful witness in determining subject matter jurisdiction, Reiss II, 235 F.3d at 747-748, could not be located by Reiss. (See GAN S.A. Mem. at 11.)
The issue to be determined by this Court has been clarified and narrowed by the Second Circuit:
The question here is whether Reiss can demonstrate a significant nexus between his engagement by Societe and/or GAN S.A. as a marketing agent in the United States and his action to recover a finder's fee for the deal that culminated in the sale of UIC and UIS by Societe to GECC ... To find a significant nexus between Societe's and/or GAN S.A.'s commercial activity in this country in its dealings with Reiss and Reiss' cause of action for a finder's fee requires a determination that Juliard had actual or apparent authority to act on behalf of Societe and/or GAN S.A.
Reiss II, 235 F.3d at 747-748. In other words, the question to be resolved is whether Juliard validly retained Reiss to act on behalf of Defendants.
Defendants argue that Juliard was not an agent of GAN S.A. or Societe and that in no way did his position as Chairperson of UIS include the authority to engage Reiss on their behalf. Reiss argues the opposite, that Juliard and Rosio were agents of the Defendants and that Juliard did have the proper authority to engage Reiss, or that Defendants, through their actions after Reiss's engagement, ratified Juliard's engagement of Reiss.

II. DISCUSSION

A. STANDARD OF REVIEW
On appeal from the district court decision, the Second Circuit determined that *277 the jurisdictional question with regard to the Defendants is not whether there is personal jurisdiction within the meaning of the New York Civil Practice Law and Rules, but whether there is subject matter jurisdiction with the meaning of the FSIA. As the Second Circuit explained, "`[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court....'" Reiss II, 235 F.3d at 746 (quoting Amerada Hess, 488 U.S. at 439, 109 S.Ct. 683). It is undisputed that the Defendants are foreign states within the meaning of the FSIA. See id. at 747 (citing 28 U.S.C. § 1603(a) ("A `foreign state' ... includes ... an agency or instrumentality of a foreign state.")) Accordingly, in their renewed motion to dismiss, Defendants argue that this Court lacks subject matter jurisdiction under the FSIA.
In a motion to dismiss pursuant to Rule 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiffs assertion of jurisdiction, or both. See Robinson, 269 F.3d at 140 (citations omitted). If the defendant challenges only the legal sufficiency of the plaintiffs jurisdictional allegations, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir.2000). But, where evidence relevant to the jurisdiction question is before the court, and resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction, a district court must consult factual evidence. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 140-141 (2d Cir.2001); Filetech S.A. v. France Telecom S.A, 157 F.3d 922, 932 (2d Cir. 1998) (it was error for district court to determine subject matter jurisdiction under the FSIA without regard to factual submissions); Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C.Cir.2000) ("When the defendant ... challenged the factual basis of the court's jurisdiction ... the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss."); Cargill Int'l S.A. v. MIT Pavel Dybenko, 991 F.2d 1012, 1019 (2d Cir. 1993). Furthermore, the Second Circuit has indicated that if material issues of fact are in dispute, "it is essential for the district court of afford the parties the opportunity to present evidentiary material at a hearing on the question of FSIA jurisdiction." Reiss II, 235 F.3d at 748.
In Cargill, 991 F.2d at 1016, the Second Circuit set forth the burden of persuasion for a finding of subject matter jurisdiction under the FSIA. If the defendant challenges the factual basis for the plaintiffs jurisdictional claim, the plaintiff has the burden of proof to demonstrate that under the exceptions set forth in the FSIA, immunity should not be granted. If the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue, the district court must "resolve disputed issues of fact, with the defendant sovereign shouldering the burden of persuasion." Robinson, 269 F.3d 133 at 144 (quoting Cargill, 991 F.2d at 1016).
In this case, Reiss argues that Defendants fall under the commercial activity exception of the FSIA. Reiss has come forward with sufficient evidence that some interdependent relationship between UIS and Defendants existed, that Juliard could have acted on behalf of Defendants, or that Defendants could have ratified Juliard's actions, to create a factual dispute to be resolved. See Reiss II, 235 F.3d at 747-748 ("Although Juliard was the chairperson of UIS, it may very well be that he acted on behalf of Societe or GAN S.A. in his dealings with Reiss ...") Defendants challenge the factual basis for Reiss's *278 claims. Specifically, they contend that Juliard, who allegedly hired Reiss, was not acting as an agent for Defendants and thus could not have bound Defendants. Therefore, the Court will base its determination concerning subject matter jurisdiction under the FSIA on factual evidence and the burden of proof rests on Defendants to demonstrate that the exception does not apply. To facilitate this Court's findings of fact an evidentiary hearing is necessary. The remainder of this decision will set forth the scope and emphasis appropriate for this hearing.
As a threshold matter, the scope of the evidence to be considered is also at issue. Defendants seem to argue that on remand the only evidence that should inform this Court's decision, at least if it favors Reiss, is the new evidence provided by Juliard or Rosio, which was specifically directed by the Second Circuit on appeal. (See GAN S.A. Mem. at 19; Societe Mem. at 8; GAN S.A. Reply Mem. at 2-4.) Societe alleges that "[b]oth Judge Scheindlin and the Court of Appeals for the Second Circuit made it clear that Reiss was not able to allege facts that, if proven, would have been sufficient to establish jurisdiction over [Defendants]." (Societe Mem. at 8.) Therefore, Defendants conclude that because Juliard's and Rosio's deposition testimony, which comprises the only new evidence entered into the record of this matter since the Second Circuit decision, did not add anything to Reiss's case for FSIA jurisdiction, Reiss's attempts to establish jurisdiction therefore have failed.
The Court does not agree with Defendants' attempt to place such a narrow focus on the facts at issue at this stage of the proceedings.[4] Although the Second Circuit suggested that depositions of Rosio and de Chavanne would "assist the court in undertaking an FSIA jurisdiction analysis," the Second Circuit in no way indicated that such new evidence would be the only evidence relevant on remand, or that it agreed with Judge Scheindlin's opinion concerning Reiss's failure to allege sufficient facts for jurisdiction to exist. In fact, the Second Circuit held that the Amended Complaint does state a claim for breach of contract and in quantum meruit against Societe and/or GAN S.A. Reiss II, 235 F.3d at 747. Furthermore, the Second Circuit characterized as "premature" Judge Scheindlin's decision on personal jurisdiction under the New York long-arm statute since it "[e]xamin[ed] only the Amended Complaint and excerpts of the Reiss deposition." Id. at 747. Regardless of what could have been offered as evidence by the Reiss in opposition to Defendant's original motion to dismiss[5], this *279 Court is not limited by any prior decision from examining all factual evidence in the record that is relevant to the Court's analysis as to whether subject matter jurisdiction exists over the Defendants.

B. THE COMMERCIAL ACTIVITY EXCEPTION

The underlying question in this case is whether there is subject matter jurisdiction within the meaning of the FSIA. See Reiss II, 235 F.3d at 746. Personal jurisdiction under the FSIA "equals subject matter jurisdiction plus valid service of process." Id. (citing Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1020 (2d Cir.1991)). No challenges concerning service of process have been registered here; therefore, subject matter jurisdiction under the FSIA is the only issue before the Court. Id.
The FSIA provides that foreign states shall be immune from the jurisdiction of the courts of the United States unless one of several statutorily defined exceptions applies. See 28 U.S.C. § 1604. "When one of these exceptions applies, the foreign government is stripped of immunity, and pursuant to 28 U.S.C. § 1330(a), subject matter jurisdiction exists in the district court." Weltover, Inc. v. Republic of Argentina, 941 F.2d 145, 148 (2d Cir. 1991).
Reiss argues that this action falls under the "commercial activity" exception to foreign sovereign immunity under 28 U.S.C. § 1605(a)(2), which provides that a foreign state is not immune from any suit in any case
in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes direct effect in the united States.
The Second Circuit has pointed to the "commercial activity carried on in the United States by [a] foreign state," as the exception upon which Reiss's action is based.[6]Reiss II, 235 F.3d at 747.
In elaborating on this commercial activity exception, the Supreme Court has "instructed that the action must be `based upon' some `commercial activity' by [a defendant] that had `substantial contact' with the United States within the meaning of the [FSIA]." Saudi Arabia v. Nelson, 507 *280 U.S. 349, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). The Second Circuit has further declared that "to sustain jurisdiction on this basis, there must be `a significant nexus ... between the commercial activity in this country upon which the exception is based and a plaintiffs cause of action.'" Reiss II, 235 F.3d at 747 (citing NYSAILA Pension Trust Fund v. Garuda Indonesia, 7 F.3d 35, 38 (2d Cir.1993)). In particular, "[t]he question here is whether Reiss can demonstrate a significant nexus between his engagement by Societe and/or GAN S.A. as a marketing agent in the United States and his action to recover a finder's fee for the deal that culminated in the sale of UIC and UIS by Societe to GECC." Id. at 747.
In order to determine whether such a nexus exists, a determination must be made as to whether Reiss was retained by Defendants.[7]See id. In turn, this determination is predicated upon a finding as to whether Juliard or Rosio acted as an agent of either of the Defendants in their interactions with Reiss. In order to determine whether an agency relationship existed between Defendants and Juliard or Rosio, the Court must determine the authority Juliard or Rosio had to act on behalf of the Defendants: "To find a significant nexus between Societe's and/or GAN S.A.'s commercial activity in this country in its dealings with Reiss and Reiss' cause of action for a finder's fee requires a determination that Juliard had actual or apparent authority to act on behalf of Societe and/or GAN S.A." Id. at 748.
Juliard or Rosio could have authority to act on the Defendants' behalf in their dealings with Reiss either through actual authority, apparent authority or through the Defendants' ratification of Juliard or Rosio's actions after the fact, even if Juliard or Rosio had no authority to engage Reiss. The Court will address each of these possibilities in turn.

1. Actual Authority

Reiss argues that because both Juliard and Rosio admitted to having engaged in commercial activity on behalf of Defendants in the United States, the agency relationship between UIS and Defendants is clear. Rosio testified that he is "actually employed by GAN since I am employed by an entity within GAN[8], i.e., UIS and fulfill my functions within UIS, but I have no other function than that one within the entity we call GAN." (Rosio Dep. at 9.) At his deposition, Juliard indicated that he did have discussions "with potential companies or investors to see whether they would eventually be interested" in investing in *281 UIS, (Juliard Dep. at 37), and later indicated that such actions on his part would obviously have required the approval of GAN, or at least approval from the Board of Directors of UIS, which included de Chavanne, the Chairman of GAN, (Juliard Dep. at 38-39). Based on this evidence concerning an employee or agency relationship between Juliard, Rosio and Defendants, Reiss concludes that Juliard's and Rosio's contacts with Reiss are sufficient to establish the nexus between Defendants commercial activity in the United States and Reiss's claim for a finder's fee.
On the other hand, Defendants argue that since Juliard and Rosio both deny having ever been authorized by Defendants to hire Reiss on Defendants' behalf, no actual authority could have existed to hire Reiss on Defendants behalf.
In fact, the issue requires a more refined analysis. First, the extent of Juliard's or Rosio's authority to act on behalf of either Defendant needs elaboration. In particular, with regard to whether the alleged agency relationship between Juliard and the Defendants sufficiently incorporated the engagement of Reiss. Defendants' analysis falls short because agency relationships exist that extend beyond exact instructions to agents by principals, i.e., an agent can be actually authorized to undertake certain types of activities, which were not expressly authorized by the principal, but were authorized through the more general agency relationship. See Lawyers' Fund for Client Protection of the State of N.Y. v. Gateway State Bank, 171 Misc.2d 485, 655 N.Y.S.2d 228 (N.Y.Sup.Ct.1996), aff'd in part, rev'd in part on other grounds, 239 A.D.2d 826, 658 N.Y.S.2d 705 (3d Dep't 1997) (a principal is liable for any actions of its agent that can be reasonably expected within the scope of authority given). The exact nature of the relationship between Juliard, Groupe Percier and both
Defendants is very much in dispute and in need of clarification by the parties, and ultimately findings of fact, before this Court can make its decision.
The cases cited by Reiss are instructive. In Communications Associates, Inc. v. Novatel Communications, Inc., 1985 WL 2542 (N.D.Ill.1985), the court imputed knowledge of subsidiary's activities to the parent, but only after a finding that the subsidiary itself was a general agent of the principal corporation. In general, a subsidiary-parent relationship is not sufficient to prove a principal-agent relationship. See id at *4 (citing C. Wright & S. Miller, 4 Federal Practice & Procedure § 1069 at 256 (1969)). "If the subsidiary's presence in a state is primarily for the purpose of carrying on its own business, and the subsidiary has preserved some semblance of independence from its parent, jurisdiction over the subsidiary will not permit jurisdiction over the parent." Id. However, in Novatel, the court found there was substantial evidence to support a finding of a general agency relationship between the parent and the subsidiary based on the evidence that the subsidiary did not act without express prior approval from its parent with respect to its day-today operations. See id.; see also Hester Int'l Corp. v. Federal Republic of Nigeria, 879 F.2d 170, 176 (5th Cir.1989) ("the necessary predicate for [plaintiff] to pursue its claims successfully is proof that NGPC was the alter ego or agent of Nigeria").
In Mayer v. Josiah Wedgwood 601 F.Supp. 1523, 1530 (S.D.N.Y.1985), a similarly complex relationship existed between the foreign parent and the subsidiary, as is present here. While the court found that a "formal" agency relationship did not exist, see id. at 1529 n. 5, the subsidiary was still an agent for jurisdictional purposes under a more flexible understanding of agency pursuant to CPLR § 302: "[A]gent *282 includes any person who, with the consent of the nondomiciliary and under some measure of his control, acts in New York for the benefit of the nondomiciliary." Id. at 1530. In Gibbons v. Udaras na Gaeltachta, the flexible agency relationship used in applying state long-arm statues is further clarified:
Where ... a person or entity acts within the jurisdiction for the defendant's benefit, and does so with the defendant's knowledge and under some degree of control by the defendant, the courts consistently apply state long-arm statutes by (1) finding, notwithstanding the absence of the formal legal trappings of an agency relationship, that the person or entity acting within the jurisdiction was the defendant's "agent" for jurisdictional purposes and (2) thereupon imputing the agent's conduct within the jurisdiction to the defendant.
549 F.Supp. 1094, 1114 n. 10 (S.D.N.Y. 1982) (citations omitted).
Here, similar to Mayer, although not New York law but the FSIA that must be considered, it is not necessary to prove that UIS was the alter ego or formal agent of either Defendant. See Gibbons, 549 F.Supp. at 1114 n. 10 ("Courts applying the FSIA should, in this Court's view, follow the same approach [as state longarm statutes] in determining whether a foreign state's commercial activity was carried on in the United States.") Rather, a more flexible agency relationship would be sufficient, comparable to the doctrine of specific agency. See 2A N.Y. Jur.2d Agency and Independent Contractors § 83 (2002) ("a principal has the unqualified right to limit the agent's authority and invest the agent with restricted powers."); Lawyers' Fund, 655 N.Y.S.2d at 228. In other words, if Juliard acted on behalf of either Defendant for the purpose of finding investors in UIS, and Defendants knew of Juliard's actions and ultimately controlled Juliard's actions, that would be persuasive for purposes of finding subject matter jurisdiction over Defendants. See Reiss II, 235 F.3d at 748 ("To find a significant nexus ... requires a determination that Juliard had actual or apparent authority to act on behalf of Societe and/or GAN S.A.") Ultimately, however, for responsibility to be placed upon Defendants for the finders fee in a final determination of this dispute, such an agency would also have to include the power to hire a subagent, i.e., Reiss.
In this case, neither party, as of yet, has sufficiently explained the level of control exerted by Defendants over UIS. The nature of this relationship is crucial. The extent and scope of any agency relationship that might have existed between Juliard, in his capacity as Chairman of UIS, and either Defendant is necessary to determine Juliard's actual authority. Similarly, the extent of Juliard's actions on behalf of either Defendant, and Defendants' knowledge and control of those actions must be examined. To make such a determination, it is necessary to determine the extent of control the Defendants had over UIS, the role de Chavanne played as a director of UIS, the meaning of Rosio's indication that as an employee of UIS, he is an employee of "GAN", and the scope of Juliard's actions on behalf of either Defendant, in particular with regard to looking for investors in Groupe Percier in the United States.
Since the burden of persuasion is on the foreign defendant, this Court urges Defendants to produce evidence, preferably witnesses, that demonstrate the nature of the relationship between Juliard, Rosio, Groupe Percier and the Defendants. Furthermore, to the extent possible, this Court suggests that Juliard, Rosio and, most importantly, the "actual" de Chavanne *283 testify to assist the Court in undertaking the FSIA analysis the Second Circuit has urged.

2. Apparent Authority

The doctrine of apparent authority requires "a factual showing that the third party relied upon the misrepresentations of the agent because of some misleading conduct on the part of the principalnot the agent." Herbert Construction Co. v. Continental Ins. Co., 931 F.2d 989, 993 (2d Cir.1991). Reiss points to a variety of facts previously referenced to support the doctrine of ratification. (Reiss Mem. at 30). Since the facts pointed to by Reiss occur after the time that Reiss was allegedly hired by Juliard, such factual allegations are more properly analyzed in the context of ratification as opposed to apparent authority, which focuses on the cloak of authority at the time of the transaction. Id. at 993-994 (apparent authority exists where the agent is "responsible for the appearance of authority in the agent to conduct the transaction in question.")

3. Ratification

Reiss also argues that because GAN S.A. and Societe were aware of, approved of, or accepted the benefits of Reiss's work on its behalf, the Defendants ratified Juliard's engagement of Reiss and are thus obligated by it. This Court has previously indicated that "[t]o ascertain whether an agency relationship exists, a court may consider whether the agent's acts were ratified by subsequent conduct of the principal." Reiss III, 185 F.Supp.2d at 339; Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank, 850 F.Supp. 1199, 1213 (S.D.N.Y.1994) ("Ratification is a form of retroactive activity that occurs where a principal, having knowledge of the material facts, accepts the benefits of the agent's actions already made on his behalf.") Ratifying conduct occurs subsequent to the original act by the agent and cures any defect in actual authority at the time of the engagement.
GAN S.A., in general terms, denies that it took any subsequent actions that could have possibly ratified Reiss's alleged engagement by Juliard. Societe, in more detail, explains how each and every factual allegation that Reiss makes does not support a finding of ratification because they are actions taken by UIS and not Societe or GAN S.A.
With the exception of the Hotel Vernet meeting on September 13 and 14, 1994 between representatives of GECC, UIS and de Chavanne, it is true that all the incidents listed by Reiss can be explained away as not directly involving the Defendants. However, it is a factual matter to be determined by the Court whether these incidents, individually or in their entirety, might not be understood to have given notice to Defendants of Reiss's involvement in the transactions with GECC and therefore, by accepting the benefits of Reiss's work, implicit consent to Juliard's engagement of Reiss by the Defendants. This is especially the case if Juliard is found to have acted as an agent in soliciting investment in UIC or UIS, and the scope of that agency remains in dispute.
Furthermore, since it is undisputed that Groupe Percier-Allied Partners was a partnership established between UIS and Reiss's firm, Allied Partners, for the purpose of promoting UIS's and other Groupe Percier companies' interests in the United States, and Societe held a 94.47 percent interest in UIS, it seems unlikely to the Court that the Defendants were not made aware of Groupe Percier-Allied Partners' activities and Reiss's part in those activities and gave some measure of approval to Reiss's work on behalf of UIS. This is especially the case since in a letter from *284 Rosio to Reiss, Rosio indicates that Juliard would "speak to GAN to obtain their approval to set up an Allied Partners cooperation." (Reiss Aff. Exh. 24; see also Rosio Dep. at 53-55.) Similarly, the joint bank account set up by Reiss for Groupe Percier-Allied Partners is likely to have been the type of activity that would need approval from Societe, the majority shareholder of UIS, which apparently represented by de Chavanne. (Juliard Dep. at 37-38). Since the relationship between the Defendants and UIS is in dispute, a decision on this issue is deferred until after the hearing, but the Court notes the import of these facts.
The Court agrees with Reiss that the Hotel Vernet incident poses more direct evidence of de Chavanne's knowledge of Reiss's actions, and is worth particular note. It is clear that this was an important meeting with GECC concerning the possibility of an investment by GECC in UIC and/or UIS, and that both Reiss and de Chavanne were present. While it may well be that Reiss attended at the request of UIS, Defendants have not satisfactorily explained why they believed Reiss would have attended if he were not involved in the negotiations in some substantial role. It appears that there were only six attendees, other than Reiss, at the Hotel Vernet meeting, all of whom were executives of GECC, UIS or Defendants. (See Reiss Aff. Exh. 54.) Furthermore, Reiss indicates that he was introduced to de Chavanne, who acknowledged his presence and, tacitly at least, his involvement. (See Reiss Aff. ¶ 82.) The details of de Chavanne's knowledge, and the import of Reiss's presence are disputed, but are factual issues that must be decided by the Court.
The Court acknowledges GAN S.A.'s argument that de Chavanne represented many different companies, and therefore his presence at a meeting may not have been as a representative of either Defendant. The Court requests clarification on this point by the parties. Similarly, if GAN S.A. was merely a holding company and it neither had any control over the activities of UIS or benefit from the sale of UIS or UIC, that should also be clarified.
Ultimately, however, some "GAN" entity owned these subsidiaries, and had to give authority to Juliard, before important decisions were made, concerning sale of UIS and UIC shares. This Court will not allow Defendants to escape subject matter jurisdiction solely because of the complexity of the "GAN" corporate structure. Arguably, some entity, other than UIS and UIC, whose shares were sold to GECC, potentially benefitted from Reiss's work on behalf of Groupe Percier. If such benefits were known and accepted by de Chavanne, or someone else in the group of entities under the control of "GAN," subject matter jurisdiction in this Court would exist over some entity in the "GAN Group" sufficiently connected to this action. Resolution of these factual questions will be resolved after the evidentiary hearing.
Based on these facts, the Court is persuaded that Reiss has come forward with sufficient evidence to require a factual determination as to the existence of subject matter jurisdiction in this Court. Therefore, it is now the burden of Defendants to convince the Court that Defendants neither authorized Reiss's engagement through Juliard acting on their behalf, nor ratified Reiss's engagement regardless of whether actual authority existed at the time of the engagement.

C. DUE PROCESS

Both Defendants emphasize that it would be a violation of due process for this Court to exercise jurisdiction over the Defendants. The Second Circuit has indicated *285 that "it is clear that Congress intended a tighter nexus than the `minimum contacts' standard for due process." Shapiro, 930 F.2d at 1018 (citations omitted). Therefore, if this Court determines that Juliard's alleged engagement of Reiss to assist in finding investors in UIS was done on behalf of the Defendants, or was later ratified by them, thereby conferring subject matter jurisdiction under the FSIA as directed by the Second Circuit, Reiss II, 235 F.3d at 747-748, the lesser standard of minimum contacts set by the due process will have been satisfied.
Accordingly, it is hereby
ORDERED that an evidentiary hearing on the issue of this Court's subject matter jurisdiction over Defendants commence on Wednesday February 26, 2003 at 9:30 a.m.
SO ORDERED.
NOTES
[1] The factual summary that follows derives primarily from Defendants' Memoranda of Law in Support of their Renewed Motion to Dismiss the Amended Complaint ("Societe Mem." and "GAN S.A. Mem." respectively), Plaintiff's Memorandum of Law in Opposition to Defendants' Renewed Motion to Dismiss the Amended Complaint and accompanying exhibits and affidavits, as well as the Second Circuit's summary of the facts in Reiss II, 235 F.3d at 739-742. Except where specifically referenced, no further citation to these sources will be made.
[2] The Second Circuit found that Defendants are foreign states under the FSIA. See id. at 738, 746. Therefore, instead of New York State law, "[t]he FSIA provides the `sole basis' for obtaining jurisdiction over foreign states and their instrumentalities in the United States." First City, Texas-Houston, N.A. v. Rafidain Bank, 150 F.3d 172, 176 (2d Cir. 1998) (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989))
[3] Excerpts of Rosio's and Juliard's depositions are attached as exhibits to the Declaration of Richard E. Haftel ("Haftel Aff."), dated June 1, 2001, and will hereinafter be referred to as "Rosio Dep." and "Juliard Dep."
[4] The Court notes that this is the second time Defendants have attempted to unduly narrow the scope of the inquiry. The first attempt, which was rejected by the Court, was to curtail the scope of the depositions of Juliard and Rosio taken by Reiss. See Reiss v. Societe Centrale Du Groupe Des Assurances Nationals, 185 F.Supp.2d 335 (S.D.N.Y.2002) ("Reiss III").
[5] GAN S.A. argues that because Judge Scheindlin never stayed discovery pending the motion to dismiss, and because the depositions taken in 1999 by Reiss upon which Reiss relies in his Memorandum of Law in opposition to Defendants' Renewed Motion to Dismiss were available before Judge Scheindlin granted Defendants' motion to dismiss, all discovery other than the Rosio and Juliard depositions should be precluded from use by Reiss because it could have been presented to Judge Scheindlin. (Reply Memorandum of Law of Defendant GAN S.A. in Support of its Renewed Motion to Dismiss the Amended Complaint, at 3.) The Court does not believe that this contention is consistent with the Second Circuit's instructions on remand. The Second Circuit vacated Judge Scheindlin's decision and instructed this Court to determine whether jurisdiction exists under the FSIA, which inquiry has never been conducted. More importantly, the Second Circuit specifically remarked that Judge Scheindlin's opinion was premature, and that it did not consider the totality of the factual evidence available, in that it only took account of excerpts from the Reiss deposition. The Circuit Court suggested that the district court should afford the parties an opportunity to fully present evidentiary material. Reiss II, 235 F.3d at 747-748. Furthermore, the Second Circuit indicated that "it would be helpful to have the depositions of Juliard and de Chavanne ... as well, to assist the court in undertaking an FSIA jurisdiction analysis." Id. (emphasis added). The depositions of Juliard and Rosio were taken by Reiss upon the suggestion of the Second Circuit to supplement the factual discovery already gathered.
[6] In addition, Reiss now argues that Defendants also fall within the exclusion for an act of the foreign state occurring elsewhere "and that act causes direct effect in the United States." (Reiss Mem. at 32.) This exception could only apply if the effect in the United States, the hiring of Reiss, occurred by action of the Defendants. Therefore, under either subpart of the "commercial activity" exception, the ultimate determination that this Court must make concerns whether Juliard served as an agent for the Defendants when they allegedly hired Reiss.
[7] For purposes of determining jurisdiction over Defendants, the Court assumes at this stage of the proceedings that Rosio and/or Juliard did indeed hire Reiss in some capacity, since substantial evidence to that effect has been supplied by Reiss and the extent and nature of the relationship between UIS and Reiss is a matter of fact that would need to be determined at trial and goes directly to the substance of the case. The motion to dismiss as to UIS and UIC was denied by the district court. Reiss I, 78 F.Supp.2d 147, 157-158. The Court believes that this assumption is consistent with the Second Circuit's instructions on remand. The issue to be decided here is not the relationship between UIS and Reiss, but rather, whether the relationship between UIS and Defendants is in such a capacity that Rosio and Juliard's actions could be attributed to Defendants If so, the nexus is established and this court has jurisdiction over Defendants
[8] Juliard uses the term "GAN" in his deposition, (see, e.g., Juliard Dep. at 32), despite Defendants' contention that the term has no particular significance, (see GAN S.A. Mem. at 4). For purposes here, the Court understands "GAN" to include both Defendants, although acknowledging Defendants' contention that it refers to more than these two companies.