Brad M. REISS, Plaintiff,

v.

SOCIETE CENTRALE DU GROUPE DES ASSURANCES NATIONALES, a/k/a Societe Centrale Du Gan, a/k/a Societe De Gestion De Garanties Et De Participations, Union Pour Le Financement D'Immeubles De Societes, Union Industrielle De Credit and Gan S.A., Defendants.

No. 98 CIV. 8302(VM).

United States District Court, S.D. New York.

Feb. 27, 2003.

Richard E. Haftel, Modlin Haftel & Nathan LLP, Richard E. Haftel, Haftel &

Silverman, P.C., New York City, for Brad M. Reiss, Plaintiff.

Fredrick E. Sherman, Jones, Day, Reavis & Pogue, New York City, for Union Pour Le Financement D'Immeubles De Societes, Defendant.

## SUPPLEMENTAL ORDER

MARRERO, District Judge.

By Decision and Order dated January 30, 2003 (the "Decision")[1] the Court, addressing defendants' renewed motion to dismiss, scheduled an evidentiary hearing with respect to the issue of whether the Court has subject matter jurisdiction over this action, which involves foreign state defendants, based on the commercial activity exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611. In separate letters to the Court dated February 19, 2003, both defendants requested clarification of the Court's ruling and additional time to comply, while also implying that the Court may have incorrectly shifted the applicable burden of persuasion to defendants. In order to respond to defendants' concerns, the Court held a conference with the parties on February 27, 2003, at which it issued a clarifying statement, a copy of which is attached and incorporated to the Order set forth below. Accordingly, it is hereby

**ORDERED** that the statement of the Court, a copy of which is attached and incorporated hereto, issued at the conference held on February 27, 2003 with the parties in this action, be made part of the official record of this matter as a Supple-

1. The Decision is reported as *Reiss v. Societe Centrale du Groupe des Assurances Nationales*, No. 98 Civ. 8302, 2002 WL 31971278 (S.D.N.Y. Jan. 30, 2003). (Because of a clerical error, the date the Decision was issued is incorrectly given as January 30, 2002 rather than January 30, 2003. The Court recently issued an Amended Order to correct this error.)

mental Order clarifying and elaborating on the Court's Order dated January 30, 2003.

**SO ORDERED.**

*Brad M. Reiss v. Societe Centrale, et al.*
98 Civ. 8302

*Statement of the Court at the Conference with the Parties on February 27, 2003*

*Attachment to Supplemental Order Dated February 27, 2003*

Pending before the Court is the renewed motion to dismiss the Amended Complaint of defendants Societe Centrale du Groupe des Assurances Nationales ("Societe") and Gan S.A. (Collectively, the "Defendants"). The Court issued a Decision and Order, dated January 30, 2003 (hereinafter, the "Decision"), analyzing the issues presented by the Renewed Motion to Dismiss, making preliminary evaluations of the evidence put forward, indicating issues of fact in dispute that must be decided by the Court and, ultimately, ordering an evidentiary hearing on the issue of whether this Court has subject matter jurisdiction over this action, which involves foreign state defendants, based on the commercial activity exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611.

This conference was convened at the request of defendant Societe in a letter dated February 19, 2003, which was supported by GAN S.A. in a letter of the same day and essentially opposed by the plaintiff in this case, Brad M. Reiss ("Reiss") in a letter dated February 21, 2003. We meet today because Societe and GAN S.A. suggest that this Court is mistaken in the following respects: (i) as to the control that the Defendants have over three of the principal witnesses in this case, Phillipe Rosio ("Rosio"), Alan Juliard ("Juliard") and Guy de Chavanne ("de Chavanne")

(collectively referred to as the "French Witnesses"); (ii) in placing the burden on the Defendants for locating and producing at an evidentiary hearing de Chavanne, the former principal of both Defendants during the time of the events at issue in this case, from around 1992–1997, who appears to have been the key executive of the "GAN group" involved in the sale of UIC and UIS to General Electric Capital Corporation ("GECC"); and (iii) in placing the burden on the Defendants for producing Rosio and Juliard at an evidentiary hearing.

The Defendants explain that they need more time to arrange for the testimony that this Court suggested would be helpful in its Decision and also request that the Court consider various alternate means of hearing the testimony of the French Witnesses because it will likely not be feasible to have them come to New York. Therefore, the Defendants have asked for an adjournment of the evidentiary hearing originally scheduled to have begun on Wednesday, February 26, 2003, and a scheduling conference in order to set a new date for an evidentiary hearing that takes into account their concerns.

There are two preliminary legal matters that should not be in dispute between the parties.

First, the Second Circuit has instructed in *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales* ("*Reiss II*") that it is "essential for the district court to afford the parties the opportunity to present evidentiary material at a hearing on the question of FSIA jurisdiction." 235 F.3d 738, 748 (2d cir.2000). The Circuit Court further instructed that "[t]he district court should afford broad latitude to both sides in this regard and resolve disputed factual matters by issuing findings of fact." *Id.* Furthermore, in its Reply Memorandum of Law in Support of its

Renewed Motion to Dismiss, dated December 2, 2002, Societe noted that "the Court's resolution of fact issues relating to jurisdiction may, if necessary, be done with the assistance of an evidentiary hearing, as the Court of Appeals stated it considered 'essential' for the resolution of disputed jurisdictional fact issues in this case." (Societe Reply Mem. at 3.) Thus, the Decision ordering an evidentiary hearing on jurisdiction to assist the Court in making findings of fact should not have been unforseen by the Defendants.

■ Second, the Second Circuit has set the ultimate burden of proof in determining jurisdiction under the FSIA with the foreign defendant. In *Robinson v. Gov't of Malaysia*, the Second Circuit noted that "in assessing whether a plaintiff has sufficiently alleged or proffered evidence to support jurisdiction under the FSIA, a district court must review the allegations in the complaint, the undisputed facts, if any, placed before it by the parties, and—if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue—resolve disputed issues of fact, *with the defendant foreign sovereign shouldering the burden of persuasion.*" 269 F.3d 133, 144 (2d Cir.2001) (emphasis added). There are a number of disputed issues of fact in this case concerning which Reiss has set forth sufficient evidence to necessitate findings of fact, as the Court clearly indicated in the Decision. Therefore, it is not "unfair," but represents the controlling FSIA law for the burden of persuasion to be on the foreign defendants in this case. Thus, the Court finds no legal basis for Defendants' suggestion in their recent letters, if indeed such is their understanding, that the Court may have improperly shifted the burden of proof to them, or for the claim of surprise or potential prejudice they now apparently convey.

In light of the law cited above, the Defendants in this case must have understood, or at least should have understood, that the ultimate burden of proof in an FSIA jurisdiction case ultimately lies with them. It is true that in the Decision, the Court for the first time explicitly indicated that under the burden shifting test in *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993), Reiss had come forward with sufficient evidence to show that the commercial activity exception may apply, and therefore, it would be upon the Defendants to prove otherwise. However, the Second Circuit made it very clear that despite the lack of evidence that the Defendants directly hired Reiss, Reiss did state a claim for breach of contract and in quantum meruit against the Defendants because "it may very well be that [Juliard] acted on behalf of Societe and/or GAN S.A. in his dealings with Reiss. . ." *See Reiss II*, 235 F.3d at 747–748. Such language should have alerted the Defendants to the possible need for procuring evidence either confirming or refuting any possible agency relationship they may have had with Juliard. The Second Circuit also stressed the very real possibility that Defendants could be found to have ratified Juliard's actions, stating: "According to the amended complaint, Societe and/or GAN S.A. accepted and benefitted from [Reiss's] services and are liable in quantum meruit as well as contract." *Id.* Therefore, the necessity of evidentiary procurement on these jurisdictional issues, which are precisely the issues this Court has ordered to be addressed at an evidentiary hearing, should not come as a total surprise to the Defendants.

■ Despite the law placing the ultimate burden upon the Defendants, and the emphasis of the Second Circuit on the importance of the testimony of Juliard and de Chavanne, it is clear that it was Reiss, and not the Defendants, who earlier took

all the affirmative steps in arranging for the testimony of the French Witnesses to be taken in France. Reiss requested from this Court Letters Rogatory to obtain the testimony of the French Witnesses. Those letters accorded *all* parties equal access and opportunities to pursue the search for the evidence that could be provided by the French Witnesses in regards to the parties' respective roles in the transactions and obligations Reiss alleges, and in addressing each party's applicable evidentiary burden. And while both parties questioned Juliard and Rosio, it is clear that it was Reiss who made the further effort to locate de Chavanne, ultimately asking help from the Defendants in locating him, but to no avail.

In fact, GAN S.A. argues in its Memorandum of Law in Support of its Renewed Motion to Dismiss, dated September 4, 2002, that Reiss has waived the opportunity to take the testimony of de Chavanne. (GAN S.A. Mem. at 11.) Apparently, GAN S.A.'s focus has been on avoiding rather than procuring the testimony of the French Witnesses. Furthermore, in its letter to the Court dated February 19, 2003, Societe describes the efforts it has made *since* the issuance of the Decision to locate de Chavanne. Given the ultimate burden of proof outlined above, it was a matter of legal strategy and judgment by Defendants to wait until now to make such efforts.

The Defendants' failure to do all that they could to locate and procure the testimony of the French Witnesses, especially that of de Chavanne, that they now assert is essential to satisfy their burden, during the nearly two years Reiss spent attempting to take the testimony of the French Witnesses through coercive means, equitably precludes the Defendants from obtaining new Letters Rogatory at this point in the proceedings. Going through the process of attempting to secure the testimony of the same French Witnesses once again coercively, through Letters Rogatory pursuant to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, signed at the Hague on March 18, 1970, 28 U.S.C. § 1781 ("Hague Evidence Convention"), would cause great delay and significant prejudice to Reiss, who originally filed his amended complaint in this action naming the current Defendants on January 29, 1999.

In light of the fact that both parties already had an opportunity, in fulfilling their respective burdens, to take the testimony of Juliard and Rosio through the compulsory Letters Rogatory, the Court concludes that it would be inequitable to require at this stage of the litigation that this process be repeated. As to de Chavanne, given that he appears to have been the principal of both the Defendants involved with the sale of UIS and UIC to GECC, it unquestionably would have been helpful to procure evidence from him on the jurisdictional issue. However, as this Court has already indicated, it was Defendants' choice to be less than aggressive in securing the testimony of de Chavanne in France previously and it would unduly delay this proceeding to send new Letters Rogatory to the Ministry of Justice in France at this point. Therefore, if de Chavanne's testimony can not be obtained voluntarily, the evidentiary hearing will proceed without it.

The Court does acknowledge the difficulties in procuring the French Witnesses' testimony voluntarily at a hearing before the Court. Since they are the principal witnesses for the Defendants in this case, their foreign residence obviously complicates and makes more difficult the Court's determination. Regardless, the Court simply suggested in the Decision that the testimony of the French Witnesses at an

evidentiary hearing would likely be beneficial to clarifying the issues of fact in dispute, as the Second Circuit has indicated in *Reiss II*, but the Court's ruling cannot be reasonably construed to order the Defendants to produce the witnesses in person. If their testimony can not be procured on a voluntary basis, the Court will make findings of fact based on the previously taken testimony of Rosio and Juliard, the documentary evidence and affidavits that have been submitted to the Court, and any documentary evidence presented at the hearing, as well as the testimony of any witnesses who might be obtainable for an evidentiary hearing in New York, including, of course, Reiss. The Defendants can endeavor to satisfy their burden of proof at the evidentiary hearing in any manner they determine most suitable and practical.

▇▇▇ If any of the French Witnesses would voluntarily agree to provide additional testimony in light of the Decision, the Court would be amenable to allowing the Defendants limited time to return to France and procure such evidence without Letters Rogatory. The Hague Evidence Convention contemplates means of assisting parties to obtain evidence abroad from witnesses who will testify voluntarily: notice to appear before an American consulate officer or foreign officer or the designation of a private commissioner before whom testimony is taken by the parties. *See Pain v. United Technologies Corp.*, 637 F.2d 775, 789 n. 67 (D.C. Cir.1980). These voluntary means of procuring testimony from witnesses residing abroad, outside of the subpoena power of the Court, are also set forth in Rule 28 of the Fed. R.Civ.P.: "a notice or commission may designate the person before whom the deposition is to be taken either by name or descriptive title." Furthermore, evidence obtained through notice or commission abroad "need not be excluded merely because it is not a verbatim transcript, because the testimony was not taken under oath, or because of any similar departure from the requirements for depositions taken within the United States under these rules." *id.* The notice and commission procedures do not necessitate involvement on the part of the French judicial authorities and as such should be feasible in a much more timely manner.

In fairness to Reiss, however, who should also have an opportunity to secure testimony from de Chavanne, the Defendants should be responsible for Reiss's counsel's reasonable costs for any contemplated trip to France, in light of the fact that he had previously attempted to locate de Chavanne in France to no avail through coercive means. Furthermore, if obtaining the testimony of the French Witnesses voluntarily proves to delay this proceeding unduly, the Court will ask the parties to proceed with the evidentiary hearing without procuring further testimony.